BOARD OF SUPERVISORS OF WARREN COUNTY

*v.*

AZRO PATTERSON *et al.*

1. COUNTIES — *of their power to sell land purchased for a specific purpose.* The proper constituted authorities of a county have the power, under the statute, to sell and convey real estate owned by the county, although such real estate may have been purchased for the purpose of erecting thereon a court house and other county buildings.

2. SAME — *where the purpose of the purchase by the county was expressed in the contract and deed.* In a contract of sale of land to a county was this clause : that the party of the first part "agrees to sell to the said party of the second part (certain described property) for court house and other county buildings," and the same clause was contained in the deed to the county : *Held*, those words did not operate in anywise to limit or restrain the power of alienation by the proper county authorities.

3. If A buys a lot of ground of B, and it is declared in the deed that he purchased it as a site for a mill or other operative establishment, the fee being conveyed to him, he has the undoubted right to dispose of it without carrying out his intention.

4. SAME — *effect of a contribution by individuals.* Where the authorities of a county, in proposing to buy a site for county buildings, were unwilling to pay the price asked for the property by the owner, and individuals interested in property adjacent to that so proposed to be purchased, voluntarily, and without solicitation on the part of the county authorities, offer to pay, and do pay, the difference in the price, in order to secure the site for such purpose : *Held*, that fact will not authorize such individuals to restrain the county authorities from making sale of the premises so purchased by them.

5. SAME — *power to sell — whence derived.* The county commissioners' courts, established by the constitution of 1818, were by law vested with plenary powers over all the concerns, fiscal and otherwise, of the several counties, including the power of alienation of their real estate, and these powers were succeeded to by boards of supervisors, in those counties which have adopted township organization, under the constitution of 1848, and by county courts in those counties which have not adopted that organization.

APPEAL from the Circuit Court of Warren county ; the Hon. ARTHUR A. SMITH, Judge, presiding.

The opinion states the case.

Mr. WILLIAM MARSHALL and Messrs. FROST & TUNNICLIFF, for the appellants.

The board had full power, under the statute, to sell the property, which they had originally purchased with a view to using the same exclusively for the erection of a court house thereon. The board has all the power originally conferred upon the county court and upon the county commissioners' court, before the adoption of the township organization, as well as the power conferred expressly upon the board of supervisors under the township organization act. Scates' Statutes, 337, § 4, subd. 1 and 4; also, p. 299, § 15, p. 302, §§ 35 and 36; *The People* v. *Thurber*, 13 Ill. 554–559; *Green* v. *Wardwell*, 17 id. 278–281.

It is claimed, that the words following the grant and description of the property, " to be used by said party of the second part for a court house, jail, and any other necessary county buildings," restrict the rights of the county, and the board of supervisors, as its agent, to the use of the property for the erection of county buildings thereon, and exclude their right to use it for any other purpose. This is not the fair intendment from the language used. It simply designates the purpose for which the property was purchased, a legitimate public object, which warrants the board in making the purchase, and it imposes no obligation upon the board forever to devote the premises to this use, or to devote them to it at all, should the exigencies of the county or the public interests require that some other use should be made of the property ; but, if this is the import of this clause in the deed, it is of no avail, for the simple reason, that it is repugnant to the words of the grant, and hence, by the settled rule of construction, applicable to deeds, it is utterly *void*. 4 Kent's Com. (marginal paging). 131–468; 2 Black. Com. (marginal paging) 298; Willard on Real Estate and Cont. 103, 104; 2 Washb. on Real Prop. 639–646; 2 Bacon's Abridg. 555; 1 Chitty's Pl. (marginal paging)

3; 1 Washb. on Real Prop. (marginal paging) 459; *Crawford* v. *Chitman*, 17 Ohio, 452; *Baulos* v. *Ash*, 19 Ill. 187, 188; *Hornbeck* v. *Westbrook*, 9 Johns. 74; 1 Kern. 315–322, 323.

Mr. John J. Glenn, for the appellees.

In construing deeds, as other writings, courts must seek to ascertain and give effect to the intentions of the parties, and for that purpose they may and will take notice of attendant circumstances, and by them determine the intentions of the parties. *Hadden* v. *Shoutz*, 15 Ill. 582; *Williams* v. *Claiborne*, 1 S. & M. Ch. 364; *Woods* v. *N. M. Comp.*, 5 N. H. 473. The evidence in this case clearly establishes these facts: The board of supervisors purchased the premises for the purpose of erecting thereon a court house and other county buildings; the appellees paid their portion of the purchase money, with the understanding and agreement they were to be used for that purpose; that the negotiations for the premises would have failed if the clause "*for the purpose of erecting thereon a court house, jail, and any other necessary county buildings,*" had not been inserted in the contract at the time of the purchase; and the appellees would not have paid any part of the purchase money of the premises, if they had been informed the premises were not to be used for that purpose.

The clause in the contract and deed "*for the purpose of erecting thereon a court house, jail and any other necessary county buildings,*" is a condition subsequent. And if the board of supervisors fail to use it for that purpose, or attempt to sell and dispose of it, they thereby forfeit all claim to that portion of the purchase money paid by appellees, and must refund it to them. *Police Jury* v. *Reeves*, 18 Martin Lou. 221; S. C., 3 Cond. R. 818; *Pickle* v. *McKissick*, 16 Penn. St. 140; *Hayden* v. *Stoughten*, 5 Pick. 534; *Grissom* v. *Hill*, 17 Ark. 483; *Lessees of Sperry* v. *Pond*, 5 Ohio, 242; *Hefner et al.* v. *Yount et al.*, 8 Blackf. 455; *Scott* v. *Stipe et al.*, 12 Ind. 74; *Castleton* v. *Langdon*, 19 Vt. 217; *Kirk* v. *King*, 3

Barr, 440; *Leach* v. *Leach*, 4 Ind. 628; *Broadway* v. *State*, 8 Blackf. 290.

The clause inserted in the deed and contract immediately following the description of the premises " for a court house," etc., was inserted for the protection of the appellees. And, although they are not mentioned in the deed or contract, it is peculiarly the province of a court of chancery to see that this stipulation is carried out or their money is refunded to them, and, especially in this case, when their interest is held in trust. *Leach* v. *Leach*, 4 Ind. 628; *Wallace* v. *Associate Reformed Church*, 10 id. 162; *Scott* v. *Stipe et al.*, 12 id. 76; *Bleeker* v. *Bingham*, 3 Paige, 249; Kerr on Injunctions, 97; *Hills* v. *Miller*, 3 Paige, 256; *Trustees of Watertown* v. *Cowen*, 4 id. 515.

The consideration that induced the appellees to contribute their money to purchase the block, was, that the county would erect thereon county buildings of magnificent proportions and fine architectural beauty, and thereby increase the value of their property; which is a sufficient consideration to enable them to maintain this suit, and one which both courts of law and equity recognize. *Robertson* v. *March et al.*, 3 Scam. 198; *Cross* v. *Pinkneyville Mill Co.*, 17 Ill. 57; *Pryor* v. *Cain*, 25 id. 294; *Thompson* v. *Supervisors, etc.*, 40 id. 385; *Stone* v. *Great Western Oil Co.*, 41 id. 96; *McClure* v. *Wilson*, 43 id. 362; *Barrow* v. *Richard*, 8 Paige, 358.

Mr. Justice Breese delivered the opinion of the Court:

This was a bill in equity, in the Warren circuit court, exhibited by Azro Patterson and others against the board of supervisors of that county, the scope and object of which was to enjoin defendants from selling or disposing of block 16 in the city of Monmouth, on the allegation that the block in question was purchased as a site for a court house and other county buildings, and to which complainants had contributed the sum of $750, part of the purchase price thereof.

It appears this block of ground was the property of Mary W. Collins, and that the board of supervisors, in September, 1867, were negotiating with her and her husband, John W. Collins, for its purchase, and that the price demanded by Collins was $6,250. This the board declined to give, but were willing to pay $5,500 for the block. The complainants, feeling a deep interest in this matter, agreed among themselves, if the board would buy the property, they would make up the difference between the price asked and that offered, being $750. The block was purchased and conveyed to the county for the expressed consideration of $5,500.

In the agreement for the sale, which bears date September 11, 1867, there is this clause : The party of the first part " agree to sell to the said party of the second part, block number 16, in the city of Monmouth, in the said county of Warren, with appurtenances thereunto belonging, for court house and other county buildings."

It is alleged in the bill of complaint that a proposition was made by the said defendants, that if the complainants would furnish the amount in difference on the purchase of the block, they, the defendants, would purchase it for the purpose of erecting thereon a court house and other buildings ; and complainants being interested in property in the neighborhood of this block, and anxious for the erection of county buildings upon it, by which the value of their property would be enhanced, acceded to the proposition of the defendants, and, through one Hiram Baldwin, thereupon executed a promissory note to Mary W. Collins for the sum of $750, at ten per cent, payable thirty days after date, of which $710 had been paid at the time of filing the bill of complaint.

It is then alleged that the defendants had caused the clerk of the county court of Warren county to publish an advertisement in the county newspapers, that the county would receive sealed bids, to be opened at the meeting of the board on the second Monday of September, 1868, for the sale of this block, or for one or more lots thereof, by which the

erection of a court house and other county buildings would be prevented; and the bill further charges that such sale is proposed to be made purposely to avoid the erection of such buildings, in fraud of the rights of complainants, and to their irreparable injury.

It is further charged, that complainants were especially invited and requested by the legal agents of the county to contribute their money toward the purchase of this block, to be purchased and used by the county, for the purpose of erecting upon it county buildings; and it is further charged, that the defendants do not possess the statutory power to sell and convey this block, or any portion of it, nor do they, by the terms of the grant to them, possess such power, but if such a colorable sale should be made, the erection of public buildings thereon would be prevented, and complainants defrauded of their money.

An injunction was prayed for to restrain the sale, which was granted.

The defendants in their answer deny any proposition to complainants of the kind and nature set up in their bill, and allege, if any note was executed for $750 to Mrs. Collins, it was not in pursuance of any agreement between the makers of the note and the defendants, and they distinctly deny that any agreement was ever made between these parties touching the purchase by the defendants of this block of ground; and, without making an exhibit of the deed from Collins and wife, they say that the deed is a deed conveying the premises to the county in fee simple absolute, and not upon any confidence, trust or condition whatsoever.    The answer admits advertising for bids for the purchase of this block, and denies all combination and fraud, and thereupon the defendants entered a motion to dissolve the injunction.    This motion was denied, and thereupon the complainants filed their replication, and the cause was heard on bill, answer, replication, depositions and exhibits, when, on the 2d day of February, 1870, the following decree was entered:

"This day this cause comes on to be heard upon the bill,

answer, proofs and exhibits in the cause, on consideration of all which the court do find the equity of the cause to be with the complainants, and that they are entitled to be repaid by the defendants the moneys advanced by them toward the purchase of said block number 16. But it is hereby ordered, adjudged and decreed, that the injunction heretofore issued in this cause be and the same is hereby so far modified, that upon the payment by the defendants to the master in chancery of this court, for the use of the complainants, the sum of $710.00, and interest from the time it was so paid by complainants, said injunction shall from thenceforth be wholly and totally dissolved, and that the defendants pay the costs, to be taxed."

To reverse this decree, the defendants appeal.

The first question to be considered is, were appellants a party to any agreement such as is set forth in the bill of complaint? We have examined the record carefully, and can find no evidence that appellants, or any authorized committee of their body, made any proposition to appellees to advance the difference for this block between the prices defendants were willing to pay and the owners to take. The fair inference from all the testimony is, that at the meeting at Baldwin's hotel, at which a committee of the board of supervisors was present, such was the anxiety of the complainants to have county buildings erected on that particular block, that they voluntarily assumed the payment of this difference, they themselves supposing that on the purchase being effected, their object would be accomplished, and they thereby derive, as individuals, more or less advantage. No promise or contract was made to or with them, that county buildings should be erected on the block, nor has the committee appointed by the board to make the purchase, any power so to bind their constituents or the county.

The main allegation of the bill, that such a proposition was made by the committee of appellants, is not established by the proof, and if it was, it is very clear the committee had no authority to make it. That appellees understood the block was to be used for the purpose of erecting upon it county

buildings is quite probable, but we fail to see, no agreement having been made to that effect, how they can profit by it. The presumption is, they were willing to risk their money, the proportion of each being small, on the chance, which seemed a flattering one, that after the block was purchased the erection of buildings " of magnificent proportions and fine architectural beauty," by which the value of their property would be increased, would follow as a matter of course.

The only question in the case is, as to the power of the proper constituted authorities of a county to sell land which may have been purchased for the purpose of erecting thereon the necessary county buildings. For this, ample power is given by chapter 27, Revised Statutes 1845. Section 36 of that act provides that the county commissioners' courts in each county shall have power to contract for and provide for the use of their respective counties, whenever it shall become necessary, any lot or lots of land whereon to erect such county buildings and obtain deeds of conveyance to such counties, and to sell and convey the same when it shall become necessary, to any purchaser or purchasers, in the manner prescribed by law. Scates' Comp. 302.

Section 35 of the same act makes it the duty of the county commissioners to cause to be erected, when in the opinion of the court the means of the county are such as to justify it, a suitable court house in each of their respective counties. Id.

Section 15 of the same act provides that the county commissioners' court, by an order entered on their minutes, may appoint a commissioner to sell and dispose of any real estate of their county, whose deed, duly acknowledged and recorded, shall convey to the purchaser all the right, title and estate of the county in the premises so conveyed. Id. 299.

These courts of county commissioners were established by the constitution of 1818, and by law were vested with plenary powers over all the concerns, fiscal and otherwise, of the several counties, to whom have succeeded boards of supervisors in those counties which have adopted township organiza-

tion, under the constitution of 1848, and county courts in those counties which have not adopted that organization. This is not now an open question in this court, it having been decided, after full consideration, that boards of supervisors of the several counties adopting township organization, are the legal successors to the county commissioners' courts. *Green et al.* v. *Wardwell et al.*, 17 Ill. 278. It follows, therefore, that as the county commissioners' courts had power to sell and convey any ground that may have been selected for the public buildings, the same power exists in the board of supervisors, the exercise must, of necessity, be a matter of discretion, for the proper exercise of which these functionaries are responsible only to their constituents.

The only remaining question is, as to the effect of the clause in the contract to convey the block, and which, it is not denied, is also contained in the deed executed by Collins. The deed conveys the absolute fee, without any conditions or restrictions whatsoever. The power of alienation is not limited or confined in any way. Had the grantors in the deed imposed as a condition of the sale, that the block should be used for county buildings and for no other purpose, they, perhaps, might invoke the power of a court of chancery to restrain a threatened sale of it, but the facts show the grantors received the price demanded for the property, abating nothing, on the ground that the purchase was made for the purpose of erecting upon it county buildings, and it was quite immaterial to them to what purpose the block would be devoted, they having received full price for it. It, no doubt, was the intention of appellants, when the purchase was made, to devote it as expressed in the deed, but that formed no part of the consideration, nor was it the inducement to the grant. Subsequent events may have admonished those authorities, that the financial condition of the county did not justify an expenditure such as contemplated when the purchase was made, and that the best interests of the county required a sale of the property. We fail to see any thing in the transaction to take from them the power expressly

conferred upon them by statute, to sell the land. There is no covenant in the deed that the land shall be devoted to a particular purpose, but by its terms the county became possessed of an absolute estate in fee simple to the land, uncontrolled by any condition, restriction, limitation or reservation, whatever.

If A buys a lot of ground of B, and it is declared in the deed that he purchases it as a site for a mill or other operative establishment, the fee being conveyed to him, he has the undoubted right to dispose of it without carrying out his intention. But if a grant be made by A to B, on condition B erects on the land granted a certain structure, and he fails so to do, the land might revert to the grantor. But it is needless further to argue the case. Here was an unqualified sale of the fee in this block; it became vested in the county, and appellants, as their lawful agents, have full right and authority to sell it, and should not have been enjoined from so doing.

In case a sale shall be made of the premises by appellants, whatever claim appellees may have to a portion of the proceeds, can be adjusted in an action which they may institute for such purpose, but as to this right we express no opinion. The right to sell being undoubted, in the appellants, the injunction should have been dissolved on the coming in of the answer and the proofs. To refuse it was error, and for the error the decree must be reversed and the cause remanded.

*Decree reversed.*