(No. 32472.—

THE CITY OF JACKSONVILLE, Appellee, *vs.* LILLIAN
PADGETT *et al.*, Appellants.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

HUGH J. GRAHAM, JR., of Springfield, for appellants.

WILLIAM L. FAY, City Attorney, of Jacksonville, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendants appealed to the Appellate Court for the Third District from a declaratory judgment entered by the circuit court of Morgan County in favor of the plaintiff, city of Jacksonville, where the trial court held that a certain strip of ground approximately 21½ feet wide was owned in fee simple by the city of Jacksonville and was not part of any street or alley of the city of Jacksonville; that the city of Jacksonville had power and authority to sell said strip of ground under sections 59-1 and 59-2 of the Revised Cities and Villages Act; (Ill. Rev. Stat. 1949, chap. 24, pars. 59-1 and 59-2;) that sections 69-11 and 69-12 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1949, chap. 24, pars. 69-11 and 69-12) did not govern the disposition of said real estate; and that the defendants were entitled to a refund of special assessments and interest thereon paid by them or their predecessors in title in connection with certain special assessment proceedings on an alley widening project. The cause was originally appealed to the Appellate Court on the theory that the question involved was whether the property in litigation was or was not a street and governed by sections 69-11 and 69-12 of the Revised Cities and Villages Act. On motion of the city of Jacksonville, the Appellate Court transferred the cause to this court on the theory that a freehold was involved in a final determination of the matter. The defendants appeal from the portion of the judgment holding the plaintiff entitled to sell the tract in question to the highest bidder, and the plaintiff filed a cross appeal from that part

of the judgment holding the defendants entitled to a refund of special assessment moneys and interest.

The city of Jacksonville acquired by warranty deed from J. W. Walton and wife, the then record owners, said deed being dated February 17, 1930, and duly recorded July 31, 1930, certain real estate situated in the business district of the city of Jacksonville and described as "that part of Lot 1, Block 16, City Addition beginning at the Southeast corner thereof, thence West 71½ feet, thence North 176 feet, thence East 71½ feet and thence South to the place of beginning in the City of Jacksonville, County of Morgan and State of Illinois." The city paid $4,070 for said property by check drawn on the general corporate funds of said city.

The defendants or their predecessors in title owned in fee simple the tract of land immediately west of and adjacent to that purchased by the city. The south boundary line of the defendants' property and of the property purchased by the city fronted on West College Avenue in the city of Jacksonville and the east property line of the property purchased by the city fronted on a 20-foot alley known as alley A in the city of Jacksonville.

Thereafter, on June 14, 1930, the city of Jacksonville passed a local improvement ordinance for the widening and paving of said alley A, which ordinance provided for condemning, among other tracts, the 71½-foot tract previously acquired by the city and described above. Thereafter on July 18, 1930, a petition was filed in the county court of Morgan County to condemn the real estate necessary for the widening of alley A, to ascertain the compensation to be paid therefor, and to levy a special assessment to pay the costs thereof and of the improvement of alley A. In the report of commissioners in said proceeding in the county court the real estate previously acquired by the city was listed as owned and occupied by the city of Jacksonville and no damages were assessed against said prop-

erty, it being shown as already acquired by the city. The commissioners also reported that they had investigated the lots, tracts and parcels abutting and adjoining the proposed improvement which would be benefited thereby and assessed the sum of $1620 against the real estate owned by defendants' predecessors in title and lying immediately west of the 71½ feet previously acquired by the city. Thereafter, on September 5, 1930, a judgment in condemnation was entered in said county court in said proceeding, no judgment being entered against the city-owned property, and the special assessment against defendants' property as reported by the commissioners was also approved.

The defendants and their predecessors in title paid the $1620 special assessment imposed against their property and also interest on the deferred installments of said assessment in the amount of $937.81.

From the plats, surveys, plans and testimony introduced in evidence, it appears that the 20-foot alley A was extended to the west and improved a distance of 50 feet. There was thus left a tract of land 21½ feet deep, title to which was in the city of Jacksonville, lying between the east line of defendants' property and the west street line of alley A as improved, which property was never developed as part of the street, never laid out in the plans as part of the street, and never used for street purposes. Said tract has a 21½ foot frontage on West College Avenue and 176 foot frontage on alley A as improved.

Thereafter, on March 21, 1932, the city of Jacksonville adopted an ordinance providing for the sale of the tract in controversy to the highest and best bidder, which recited that title to the property purchased by the city on February 17, 1930, was duly acquired for use in connection with the widening and paving of alley A and that the city was making no use of the 21½ feet thereof previously described, and that the council was of the opinion that said 21½ feet was no longer necessary, appropriate or required for

the use of the city. On several occasions thereafter, advertisement of such sale was made and bids therefor received, including bids from the defendant Lillian Padgett, but, for sundry reasons, the bids were never accepted or sale thereof consummated. On various occasions Lillian Padgett leased the strip of land from the city of Jacksonville.

On March 13, 1950, the city council of the city of Jacksonville duly adopted an ordinance directing the sale of the real estate here in question to the highest bidder pursuant to sections 59-1 and 59-2 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1949, chap. 24, pars. 59-1 and 59-2.) Thereafter, the provisions of said statute as to notice and publication were followed and bids were received and opened on April 3, 1950. The high bid for said property was $4250. The defendant Lillian Padgett submitted a bid of $1677.50 cash plus $2155.39 previously paid as a street assessment for the widening of alley A.

The defendants then claimed that the tract of land here in question, by virtue of the special assessment proceedings, became a part of the street and that therefore, the city was without power to sell said tract of real estate but could only dispose of same by vacating it to the defendant Lillian Padgett, as the adjoining property owner, under the provisions of sections 69-11 and 69-12 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1949, chap. 24, pars. 69-11 and 69-12.) The defendants employed attorneys to contest the right of the city to sell said real estate to the highest bidder and threatened suit against the city if it accepted the high bid for said real estate. Such contention of the defendants is based on the theory that the tract of real estate here in question was a part of the street and that, therefore, the city must either retain the same or vacate and abandon, fixing necessary compensation, if any, and permit the title to vest in the adjoining owner under sections 69-11 and 69-12 of the Revised Cities and Villages Act.

The defendants also asserted in the alternative that they were entitled to a refund of the full amount of the special assessment and interest paid by them and their predecessors in title in the event the city did sell the tract to the highest bidder. Under such circumstances, the city filed its complaint for declaratory judgment, and judgment was later entered as hereinbefore indicated.

Section 59-1 of the Revised Cities and Villages Act provides in substance that any city or village incorporated under any general or special law, which acquires or holds any real estate for any purpose whatsoever, excepting certain real estate not pertinent to the issues in the present case, has the power to convey the real estate when, in the opinion of the corporate authorities, the real estate is no longer necessary or appropriate, required for the use of, profitable to, or for the best interest of the city or village, such power to be exercised by an ordinance passed by three fourths of the aldermen or trustees of the municipality at any regular meeting or at any special meeting called for that purpose. Section 59-2 of the same statute contains provisions as to the contents of the ordinance for sale, to be adopted by the city, requirements for notice and publication, and directions as to the opening and acceptance of bids.

Section 69-11 of the Revised Cities and Villages Act in substance provides that whenever the corporate authorities of any municipality, whether incorporated by special act or under any general law, determine that the public interests will be subserved by vacating any street or alley or part thereof within their jurisdiction, they may vacate that street or alley or part thereof by an ordinance. The section then proceeds to specify the nature of and method of passing such an ordinance, authorizes such ordinance to provide for compensation to the city from abutting owners for the benefits accruing from such vacation, provides that the determination by the corporate authorities in such an ordinance of the nature of the public interest served is

conclusive, and authorizes damages to be ascertained and paid if any result from such vacation. Section 69-12 of the same statute provides in substance that, except in cases where the deed or other instrument dedicating a street or alley or part thereof has expressly provided for a specific devolution of the title thereto upon abandonment or vacation thereof, whenever any street or alley or part thereof is vacated the title to the land within the street or alley or part thereof so vacated shall vest in the then owners of the land abutting thereon in the same proportions and to the same extent as if the street or alley had been dedicated by a common-law plat and as if the fee thereto had been acquired by the owners as a part of the land abutting.

It has uniformly been held that where an appeal involves an issue whether or not a strip of ground constitutes a public highway, a freehold is involved and a direct appeal from the trial court judgment to the Supreme Court is proper. (*Stengl* v. *Starr Brothers,* 370 Ill. 118; *Roloson* v. *Barnett,* 243 Ill. 130; *Perry* v. *Bozarth,* 198 Ill. 328; *Taylor* v. *Pierce,* 174 Ill. 9.) Consequently, the action of Appellate Court in transferring this cause to this court was correct.

The controlling question which must first be decided in order to resolve the issues presented here is whether the property in question is or is not a part of the street. The answer to such question depends upon combined questions of fact and law.

The record clearly shows, and it is so recognized by all parties to this suit, that title to the property here in question was acquired by the city of Jacksonville at private purchase for a valuable consideration paid out of the city's general corporate funds prior to any other official action taken by the city towards the widening or improvement of the street here in question. Section 2-9 of the Revised Cities and Villages Act empowers cities to acquire and hold real estate for corporate purposes. (Ill. Rev. Stat.

1949, chap. 24, par. 2-9.) Under such statute and well-accepted principles of law, acquisition of real estate by a city is limited to the extent that it must be in pursuance of and for a corporate purpose. (*City of Champaign* v. *Harmon*, 98 Ill. 491.) Although nothing is stated in the deed of conveyance as to the purpose of acquisition of this particular tract by the city, it clearly appears from ordinances subsequently enacted by the city, and it is generally conceded by both of the parties hereto, that the underlying purpose in the acquisition of the tract by the city of Jacksonville was to use the same in the widening and improvement of alley A. The deed to the city, however, being absolute with no conditions of reverter or use, operated to put the full and absolute fee title thereto in the city. Subsequently, the city did improve and widen alley A, and, in so doing, did actually lay out, devote, dedicate and use the greater portion of the tract originally acquired in fee for street purposes. The tract here in question is the small remnant of the original parcel which it was unnecessary to use in effecting the widening and improvement of alley A and, from the evidence introduced at the trial, the small remnant or parcel of land here in question was never laid out, dedicated, devoted or used for street purposes by the city in any manner whatsoever. We thus are forced to the factual conclusion that the parcel of real estate here involved was originally acquired in fee simple by the city of Jacksonville as part of a larger tract for the purpose of being devoted to street purposes but in fact was never so devoted, dedicated, used or laid out.

In commenting on what constitutes a part of a street, it is stated in McQuillin on Municipal Corporations, Third Edition, Volume 10, page 583, as follows: "To constitute a way, street or public way within the jurisdiction of the public authorities, its recognition or establishment as such must distinctly appear, and the acts alleged to constitute an opening must be unequivocal. Mere improvement of a

street is not always sufficient. Acquisition of land for a street by condemnation, dedication, or otherwise, is to be distinguished from the act of opening up or laying out the street." The same writer, at page 585 of the same work, further states: "Land, though owned by the city in fee simple, does not acquire the status of a street until it is not only defined and laid out by survey, but also actually opened by work."

The defendants rely primarily upon the case of *City of Mt. Carmel v. Shaw*, 155 Ill. 37, as the legal authority sustaining their contention in this respect. In the *Mt. Carmel case* it appears that the city was originally planned, platted and laid out with 99-foot street. Large maple trees had been planted and grown about six feet inside the original street line in front of certain property, and sidewalks constructed between said trees and the abutting lot, but within the street line. The city passed an ordinance which narrowed the width of the streets and purported to vacate and donate two feet on each side of the street to the abutting property owners. The same ordinance set aside the next six feet on which to build sidewalks and the next ten feet on both sides of the street were set apart for lawn purposes, the ordinance specifically retaining in the city full control of the sidewalk and lawn areas. Later the city proposed and threatened to remove two large maple trees in order to build a sidewalk along the area set apart for sidewalk purposes, and the abutting property owner brought a suit in chancery to enjoin the destruction of such trees. In holding in that case that the city may vacate a part of a street and thereby automatically vest title to the vacated part in the abutting owners, the court did not pass on any questions controlling the decision in the present case. In the *Mt. Carmel case* it was clearly established that certain specified areas had originally been dedicated and platted as a street and portions thereof subsequently vacated. The decision in the *Mt. Carmel case* is clearly correct under

the facts and issues there presented, but it in no way passes upon the question of when a parcel of land becomes a street or part thereof subject to vacation only.

In McQuillin on Municipal Corporations, 1912 Edition, volume 3, section 1140, at page 2511, it is stated as follows: "All property held by the city in fee simple, without limitation or restriction as to its alienation, may be disposed of by the city at any time before it is dedicated to a public use. In other words, the city has the right to sell or dispose of property, real or personal, to which it has the absolute title and which is not affected by a public trust, in substantially the same manner as an individual unless restrained by statute or charter; and this power is an incidental power inherent in all corporations, public or private. Thus, land held by the city in full use and ownership—*e.g.,* commons acquired by confirmation under Act of Congress—may be sold when no longer needed for public use. So land bought for a public purpose, if not actually so used, cannot be said to be affected by a public trust, and hence may be sold." In support thereof McQuillin cites *Warren County* v. *Patterson,* 56 Ill. 111. In the *Warren County case* it was held that although a county acquired the fee-simple title to certain real estate by a contract of sale and deed which expressly stated that the property was for the purpose of erecting thereon a courthouse and other county buildings, yet the county was not obligated to so use the property and that the county had the power to sell and convey such real estate after its acquisition, the statement of the purpose in the contract and deed in no way limiting or restraining the power of alienation. We therefore conclude that the trial court correctly found that the tract of land here in question was owned in fee simple by the city of Jacksonville, was not a part of any street or alley of the city of Jacksonville, that, therefore, sections 69-11 and 69-12 of the Revised Cities and Villages Act do not govern the disposition of said tract, and that the city of Jack-

sonville has full power and authority to sell said tract under sections 59-1 and 59-2 of the Revised Cities and Villages Act.

As to the contention of defendants that the city of Jacksonville is estopped to deny that the tract here in question is part of the street, the evidence in the record clearly shows that although the entire parcel, of which the tract here in question is a remnant, was originally acquired for street purposes, the plats and plans for the actual work and laying out of the street widening and improvement project showed the street lines to be as ultimately developed and showed that the tract here in question would not be used for street purposes. The defendants or their predecessors in title were parties to the condemnation and special assessment proceedings. The essential element to an equitable estoppel is a misrepresentation or concealment of material facts. (*Lowenberg* v. *Booth,* 330 Ill. 548.) There being no such misrepresentation or concealment of material facts by the city of Jacksonville, the claim of equitable estoppel must fail.

On the cross appeal of the city of Jacksonville, it is necessary to consider the error assigned that there was no right in the trial court to enter judgment that the defendants were entitled to a refund of special assessments paid by them or by their predecessors in title in the amount of $2557.81, including interest.

The material facts to be considered in determining this question do not seem to be in dispute. In 1930 the city of Jacksonville filed a petition to condemn the real estate necessary for the purpose of widening alley A, to improve said alley A as so widened, and to levy a special assessment to pay the costs thereof, and a special assessment was levied against the property now owned by the defendants, in the name of Uriah Ziegler in the amount of $1620 payable in twenty installments. There is no claim made of any lack of jurisdiction or other irregularities of the court

in that proceeding. The record does not show when or how the defendants obtained title to the property they now own, but the stipulation of facts merely shows that they are now the owners of said property and that they, and their predecessors in title, have paid the $1620 special assessment against the property they now own, together with interest in the amount of $937.81. Uriah Ziegler is not a party to this proceeding and there is no proof in the record what part of the special assessment was paid by Uriah Ziegler nor what portion thereof was paid by the defendants since they obtained title.

The theory of the defendants seems to be that, because the court below found that the city of Jacksonville was the owner of the 21½ feet of ground adjoining the improved alley A, thereby the property of the defendants did not abut upon the improvement and for that reason it was unlawful to spread the assessment against the defendants' nonabutting property.

We cannot agree with this contention. In *Roberts v. City of Evanston,* 218 Ill. 296, an assessment was levied against nonabutting property for a paving of a street. The record showed that the court had jurisdiction of the parties and the subject matter as provided by statute. No appeal was taken from the judgment confirming the special assessment. The land owner filed a bill in chancery for an injunction and claimed that property could not be specially assessed for the paving of a street unless it abuts upon the street so paved. The trial court dismissed the complaint for want of equity and, on appeal, this court affirmed and held that in special assessments it is not essential that the property assessed should be contiguous to or abutting upon the improvement. It is sufficient that the property be presently, specially benefited.

In the later case of *People ex rel Dorris v. Carnahan,* 270 Ill. 489, there was a judgment confirming a special assessment for a local improvement and the owner of the

lots did not pay the special assessment. Upon an application for sale of the lots to make up the amount due for the special assessment in the county court, the owner objected that some of the lots assessed for the improvement to be constructed by special assessment under the Local Improvement Act did not abut upon the streets shown by the ordinance as the ones to be improved. The trial court sustained the objections,' but this court, on appeal, reversed and remanded, with directions to overrule the objections, and held that whether or not the property of the objectors received any benefit from the improvement or was assessed more than it was benefited by the improvement was one of the issues tried upon the application for confirmation of the assessment, and that the rule is well settled in this State that on the hearing on the application for judgment and order of sale no objections can be urged which might have been urged on the hearing to confirm the assessment roll, except such as go to the jurisdiction of the court to enter the judgment of the confirmation, which must appear upon the face of the record. *People ex rel. McCall* v. *Martin,* 243 Ill. 284, and cases cited.

In *Woodruff* v. *City of Chicago,* 394 Ill. 542, it was held that where a city actually abandons a street improvement project which had been authorized to be paid for by special assessments, then persons paying such assessment may recover back the same from the city in an appropriate action. However, no abandonment of the special improvement project is present in this case. The special improvement project as originally proposed in the special assessment proceeding was actually completed as planned and paid for, presumably from the proceeds of the special assessment. There having been no abandonment of the improvement project, the *Woodruff case* is no authority for the recovery of the assessments paid by the defendants in this case.

In light of the legal reasoning contained in the foregoing authorities, we are of the opinion that the judgment

of confirmation of the special assessment against the property of Uriah Ziegler and his subsequent failure to appeal from that judgment rendered him powerless to bring suit to enjoin the collection of the assessment, and neither could he have successfully objected to an application for sale of the property assessed in an application for judgment for sale for delinquent taxes in the county court.

We think the conclusion is irresistible that, if Uriah Ziegler could not have enjoined the collection of the special assessment nor have successfully objected to a sale for delinquent taxes, there is nothing appearing in the record that would give the defendants, after the lapse of twenty years from the time that judgment was entered, any enforceable equity in this proceeding.

No cases have been cited in the brief for the defendants-appellants and no reason advanced in argument as to why the defendants would have any rights in the premises superior to Ziegler. Legal reasoning compels the conclusion that if Uriah Ziegler were a party to this suit he would be barred by *res adjudicata* of the judgment in the special assessment proceeding, and the defendants claiming title in some way from him would likewise be barred. The defendants would have no right in this case for the further reason that the evidence does not show what amount of the special assessment or interest thereon was paid by the defendants. The record merely shows the amount paid by the defendants and their predecessors in title. No judgment could be entered in favor of the defendants, if they were otherwise entitled to recover, without proof as to the amount paid by them.

The evidence in this case does not show any mistake of fact. The title of the city of Jacksonville was by deed of record and if there were any mistake of any kind it would be solely a mistake of law which would not avail the defendants. The finding of the trial court, in paragraph 4 of

the decree, that in spreading the assessment upon the property of the defendants the commissioners mistakenly considered said property as land adjoining and abutting said improvement, and that because of said mistake the defendants are entitled to a refund in full of all special assessments paid by them or their predecessors in title, together with interest paid on said assessments, cannot be sustained either as a finding of fact or as permissible under the law. We find nothing in the evidence to show any mistake of the commissioners and as a matter of law it would not be competent to show that they made a mistake. In the *Carnahan case,* the opinion shows that the trial court permitted the objectors on application for judgment at tax sale of a special assessment to show by the commissioner who spread the assessment that in spreading the assessment he did so on the assumption that sidewalks were to be constructed as contended by appellees; but this court held that the judgment in the special assessment proceeding was *res adjudicata* and that no objections can be urged which might have been urged on the hearing to confirm the assessment roll, except such as go to the jurisdiction of the court.

For the above reasons, the declaratory judgment entered by the circuit court of Morgan County, is affirmed wherein it held that the city of Jacksonville was the owner of the property described in the judgment and had full power and authority to sell the same as therein mentioned, but the judgment must be and is reversed wherein it held that the defendants are entitled to a refund of the special assessments and interest thereon paid by them or their predecessors in title, and the cause is remanded with directions to enter a decree in accordance with this opinion.

*Affirmed in part and reversed in part*
*and remanded, with directions.*