(No. 11136.—Reversed and remanded.)

NETTIE COOGAN *et al.* Plaintiffs in Error, *vs.* EMMA JONES *et al.* Defendants in Error.

*Opinion filed April 19, 1917.*

1. DEEDS—*words "bodily heirs" mean the same as "heirs of the body."* The words "bodily heirs," when used in a deed, mean the same as "heirs of the body," and whichever expression is used there is no difference in the effect of the deed.

2. SAME—*conveyance to grantee "and her bodily heirs" gives grantee only life estate.* Under section 6 of the Conveyances act a deed conveying land to a grantee "and her bodily heirs" gives the grantee only a life estate with remainder in fee to the heirs of her body, with a reversion, in case of failure of issue, in the heirs-at-law of the grantor.

3. SAME—*when habendum clause does not show an intention to convey a fee.* Where the granting clause of a deed conveys land to the grantee "and her bodily heirs," subject to a life estate in the grantor, the estate of the named grantee will not be enlarged to a fee by the *habendum* clause, which provides that at the grantor's death the property is to go into full ownership and control of the grantee "or her heirs," where there is nothing in the deed to indicate an intention to give a present estate to the "bodily heirs," which would require holding the grant to the bodily heirs void for uncertainty. (*Duffield* v. *Duffield,* 268 Ill. 29, distinguished.)

4. SAME—*the habendum clause will be rejected if irreconcilable with granting clause.* The *habendum* clause in a deed may under certain circumstances, as where the granting clause does not mention the estate conveyed, have the effect of explaining and declaring the intent of the grantor as to what estate he intended to convey, but if the *habendum* clause is irreconcilable with the granting clause it will be rejected.

5. SAME—*a deed is more strictly construed than a will.* In a deed the grantor is presumed to intend what his words import, and less latitude is permitted in construing a deed than a will.

CARTWRIGHT and DUNN, JJ., specially concurring.

CARTER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

WALTER T. GUNN, (W. B. COONEY, of counsel,) for plaintiffs in error.

O. M. JONES, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error filed their bill in the circuit court of Vermilion county for the partition of thirty-seven acres of land situated in said county. Defendants in error answered the bill and a replication was filed to the answer. The master in chancery to whom the cause was referred for proof and findings made a report on the evidence taken before him and recommended that the bill be dismissed for want of equity, at the costs of plaintiffs in error. On the hearing upon exceptions properly preserved the court sustained the report of the master in chancery and entered a decree accordingly, and this writ of error is prosecuted to review the court's decree.

On October 20, 1881, Charles Gones, then owner in fee of said premises, and his wife, Mary, conveyed by warranty deed the said lands to his daughter, Hannah F. Hodges. The parts of said deed material to this consideration are the granting clause and a reservation and an *habendum* clause, which read as follows:

"The grantors, Charles Gones and Mary J. Gones, his wife, of Catlin, in the county of Vermilion and State of Illinois, for and in consideration of valuable consideration and one dollar in hand paid, convey and warrant to Hannah F. Hodges and her bodily heirs, of .........., county of Vermilion, State of Illinois, the following described real estate, to-wit: The west half of the east half of the southwest quarter of section twenty-seven (27), town nineteen (19), range twelve (12), west, excepting three (3) acres off the north end of said tract of land, and also subject to a coal lease given to J. D. Payne and Wm. Henderson. Provided the said Charles Gones holds the right of possession, management and control and profits of the products derived from the above described tract of land during his natural lifetime, and at his death, then the above described

tract of land to go into full ownership and control of the said Hannah F. Hodges or her heirs, situated in the county of Vermilion and State of Illinois."

At the date of the delivery of the said deed Hannah F. Hodges had three children living. Thereafter six other children were born to her, and the nine children are plaintiffs in error and are the only children and the only heirs of the body of said Hannah F. Hodges, who died in 1913. Charles Gones died prior to the year 1884, and the coal lease mentioned in the deed has terminated. On April 12, 1884, Hannah F. Hodges and her husband, Milton N. Hodges, conveyed a portion of said premises to William A. Hodges. Arthur Jones received a conveyance of the same tract conveyed to William A. Hodges, November 14, 1892, and Arthur Jones' title to said tract is completely connected by *mesne* conveyances from William A. Hodges to various grantees, including Mary R. Boyer and her husband, James, who conveyed directly to Arthur Jones. On January 2, 1888, Hannah F. Hodges and her husband, Milton N. Hodges, by warranty deed conveyed the remainder of said premises to Arthur Jones. Arthur Jones paid the full market value for the said premises at the time he purchased them, and died intestate in 1914, leaving him surviving his wife, Emma Jones, and three children as his only heirs-at-law, and who are the defendants in error.

Defendants in error contend that the deed to Hannah F. Hodges from her father conveyed to her an estate in fee simple, subject to the life estate of her father. On the other hand, plaintiffs in error insist that by said deed she only took a life estate, and that plaintiffs in error, as her bodily heirs, by said deed took the remainder in fee simple. Both parties agree that whatever estate was conveyed to her was subject to a life estate in her father and to the said coal lease, and that her title vested immediately on the delivery of the deed. Such was undoubtedly the effect of the deed under the holdings of this court. *Shackelton* v.

*Sebree,* 86 Ill. 616; *White* v. *Willard,* 232 id. 464; *Hathaway* v. *Cook,* 258 id. 92.

"A conditional fee, at common law, was a fee restrained to some particular heirs exclusive of others, * * * as to the heirs *of a man's body,* by which only his lineal descendants were admitted in exclusion of collateral heirs, or to the heirs *male of his body,* in exclusion both of collaterals and lineal females also. It was called a conditional fee by reason of the condition expressed or implied in the donation of it, that if the donee died without such particular heirs the land should revert to the donor." (2 Blackstone's Com. 110.) After the Statute of Westminster the Second, commonly called the statute *de donis conditionalibus,* was passed in England it was ruled by the judges that the donee no longer had a fee simple conditional. Under that statute they divided the estate into two parts, leaving in the donee a new kind of a particular estate, which they denominated a fee tail, and investing in the donor the ultimate fee simple of the land expectant on failure of issue, called a reversion. (2 Blackstone's Com. 112.) Such an estate since the statute *de donis* has been known as an estate tail general, where the lands and tenements are conveyed to one and the heirs of his body begotten. (2 Blackstone's Com. 113.) Formerly the word "heirs" was necessary in all grants or donations by deed in order to make a fee or an estate of inheritance. The highest estate that a man could have was an estate in fee simple, and such an estate was usually and customarily conveyed by an expression in the deed that the grant or gift was to the grantee or donee (naming him) and to his heirs forever, or to him and to his heirs absolutely, or to him and his heirs and assigns forever. The word "heirs" was also necessary to create a fee tail, and the word "body," or some other words of procreation, were necessary to make a fee tail and to ascertain to what heirs in particular the fee was limited. The words commonly employed in the granting clause of a deed con-

veying a fee tail are words showing a grant to the grantee "and the heirs of his body begotten," or to him and the "heirs of his body," where the estate granted is an estate tail general. If the deed has an *habendum* clause, that clause usually reads, "to have and to hold to him and the heirs of his body begotten," etc.

There can be no question that a deed containing a granting clause and an *habendum* clause of the character just described, under our law conveys a fee tail under the statute *de donis* and not an estate in fee simple, but under our present statute in relation to conveyances (section 6) the grantee in such conveyance will take an estate for life with remainder in fee to the heirs of his body, leaving a reversion, in case of an entire failure of issue to the grantee, in the heirs-at-law of the grantor. There is no difference, in the effect of a deed, between a grant to one "and the heirs of his body begotten" and to one and "his bodily heirs." In the case of *Blair* v. *VanBlarcum,* 71 Ill. 290, the language used in the will was "unto Mary Gamble and to the heirs of her body and to their heirs and assigns," and this court held that the words employed in that case fall within the requirements of the law creating an estate tail general. In the case of *Kyner* v. *Boll,* 182 Ill. 171, the language of the deed was "to Jennie Kyner, bodily heirs and assigns," and this court there held that under the statute *de donis* an estate in fee tail general was created, and that under our present statute Jennie Kyner only took a life estate, remainder in fee to the heirs of her body. Similar holdings were made by this court in *Frazer* v. *Peoria County,* 74 Ill. 282, and *Lewis* v. *Pleasants,* 143 id. 271, and also in the cases of *Lehndorf* v. *Cope,* 122 Ill. 317, and *Atherton* v. *Roche,* 192 id. 252, except that in the last two cases it was held that the grantee took an estate tail special.

By the granting clause in the deed now under consideration the grantors, Charles Gones and wife, expressly "convey and warrant to Hannah F. Hodges and her bodily

heirs" the lands described in the deed. Under the fore-going authorities Hannah F. Hodges was only granted a life estate by that deed, and at her death her bodily heirs, plaintiffs in error, became invested with a full fee simple title thereto, unless, as claimed by defendants in error, the *habendum* clause was effectual to give Hannah F. Hodges a fee simple title to said lands when construed with the granting clause.

Counsel for defendants in error insists that the deed under consideration conveyed an estate in fee simple to Hannah F. Hodges subject to a life estate in her father, and that the words "her bodily heirs," linked with the mother's name, did not create a future estate in those who should at her death be the heirs of her body. It is further insisted that the deed purports to grant a present estate in possession to Hannah F. Hodges and to other grantees not in being when the deed was executed, the persons not in being being the bodily heirs of Hannah F. Hodges, and that under the holding in *Duffield* v. *Duffield,* 268 Ill. 29, the deed is void as to her bodily heirs, as they were not then in being. There is no indication anywhere in the deed of any intent on the part of the grantor to convey a present estate in possession to the bodily heirs of Hannah F. Hodges. The words "and her bodily heirs," found in the granting clause of the deed, are mere words of limitation that are used to show the character of the estate that was granted to Hannah F. Hodges and are not words of pur-chase. The words in the *habendum* clause, "and at his death, then the above described tract of land to go into full ownership and control of the said Hannah F. Hodges or her heirs," do not have the effect, when construed with the granting clause, to convey to Hannah F. Hodges a fee simple estate.

It is argued that the *habendum* clause, taken alone, nec-essarily means that the fee was conveyed to the daughter by said deed. Conceding that to be true, the contention

of counsel for defendants in error is unsound. While the *habendum* clause may under certain circumstances, as where the granting clause does not mention the estate conveyed, have the effect of explaining and declaring the intent of the grantor as to what estate he intended to convey, still, when it is irreconcilable with the granting clause, the *habendum* clause is to be rejected. It can only affect the grant when it can be construed as consistent with the granting clause. (1 Devlin on Real Estate Deeds, sec. 220; *Riggin* v. *Love,* 72 Ill. 553; *Sassenberg* v. *Huseman,* 182 id. 341.) If, however, we give the words in the granting clause the meaning attributed to them by defendants in error's counsel and construe the word "or" to mean "and," and read the *habendum* clause, "and at his death, then the above described tract of land to go into full ownership and control of the said Hannah F. Hodges and her heirs," we must still hold that Hannah F. Hodges was granted an estate tail under the statute *de donis,* which under section 6 of our statute on conveyances is changed to a life estate in her with remainder in fee to the heirs of her body. This would be the proper construction of the deed if we should give effect to both clauses of the deed. In Washburn on Real Property (vol. 1, p. *73,) we find this language: "If the first grant had been to A and the heirs of his body with the *habendum* to A and his heirs, without any terms of restriction, the courts, in order to give effect to both clauses, if possible, would hold that he first creates an estate tail, and that so long as he has issue to take they will take as tenants in tail, but if at any time said line of issue fails then the estate would go to his heirs generally, so that he is said to take an estate tail *in præsenti,* with an estate in fee simple in expectancy." In construing this deed we must hold that the intention of the grantor is that which is apparent and manifest by the deed itself. The grantor is presumed to intend what his words import. The same license permitted in the case of construction of a will is not allowed

when construing the words in a deed. *Butler* v. *Huestis,* 68 Ill. 594; *Duffield* v. *Duffield, supra.*

As Hannah F. Hodges was only granted a life estate in the said lands by the deed from her father, she by her subsequent deeds only conveyed life estates to her grantees. At her death the estate of her grantee, Arthur Jones, ended and his heirs thereafter had no title or interest in the premises, and the plaintiffs in error were the only bodily heirs of Hannah F. Hodges and became the full fee simple owners of the said premises. (*Turner* v. *Hause,* 199 Ill. 464.) They were therefore entitled to partition of said premises according to the prayer of their bill, and the court erred in dismissing their bill for want of equity.

The decree of the circuit court is reversed and the cause remanded, with directions to render a decree for partition in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

CARTWRIGHT and DUNN, JJ., specially concurring:

We regard the conclusion reached in this case as correct but the process by which it is reached as not in accordance with rules of law. In *Duffield* v. *Duffield,* 268 Ill. 29, Henry T. Duffield and the heirs of his body were named as grantee and the deed purported to convey to the grantee a present estate in possession. The heirs of the body of Henry T. Duffield not then being in existence could not take such an estate, and the grant was to Henry T. Duffield, alone. In this case there was no grant of a present estate in possession but the conveyance was to Hannah F. Hodges and her bodily heirs of an estate to take effect in possession at the death of the grantor, Charles Gones. The words "and her bodily heirs," contained in the grant, were words of limitation defining the character of the estate that was granted to Hannah F. Hodges. In the subsequent provision as to the time when the estate granted should take effect in possession, the grantor manifestly used "or her

heirs" as denoting the same class of heirs as those to whom the estate had been limited, intending that the full ownership and control should then vest in Hannah F. Hodges if living, or her bodily heirs if she should die before the grantor.

The deed was in the statutory form and contained no *habendum* clause, which, under the former system of conveyancing, never granted an estate but was only used to define the extent of the estate granted or to qualify or explain its nature, and which is not contemplated or provided for in the forms of conveyances provided by the statute. As there is no *habendum* clause in the deed, what is said about the effect of such a clause seems to us to be inapplicable. The granting clause defined the nature and character of the estate granted, which at common law would have been a fee tail, and by section 6 of the Conveyance act it was turned into an estate for life in Hannah F. Hodges, with remainder to her bodily heirs.

Mr. JUSTICE CARTER, dissenting.

---

(No. 11274.—Reversed and remanded.)
C. C. LEONARD, Appellant, vs. THE CITY OF METROPOLIS, Appellee.

*Opinion filed April 19, 1917.*