127 F.2d 1001 (1942)
In re CHICAGO & N. W. RY. CO.
HICKS et al.
v.
THOMSON et al.
No. 6949.
Circuit Court of Appeals, Seventh Circuit.
April 8, 1942.
Rehearing Denied June 9, 1942.
*1002 Roy F. Hall, of Rockford, Ill., and Ferris E. Hurd and William F. Price, both of Chicago, Ill., for appellants.
Stanton E. Hyer, of Rockford, Ill., and Lowell Hastings, William B. Hale, Sidney K. Jackson, and Edward J. Rothman, all of Chicago, Ill., for appellees.
Before SPARKS, MAJOR, and KERNER, Circuit Judges.
KERNER, Circuit Judge.
Florence G. Hicks and N. E. Catlin, appellants, filed an action in the debtor's reorganization proceedings against Charles M. Thomson, as trustee of the Chicago & North Western Railway Company, and James E. Lockwood, his lessee, challenging the trustee's title to and use of a strip of land, which had been acquired by deed, part of which had been leased to Lockwood as a site for a bulk oil and retail filling station. The action was brought on the theory that the Chicago & North Western (hereinafter called the "Railroad") was vested with an easement for railroad purposes, which interest no longer existed because the Railroad had ceased to use the land, and that in any event it could not lease the land for a private gasoline filling station purpose.
In 1863 James S. Camp, owner in fee of 71 acres of land northeast of Rockford, Illinois, conveyed an interest in his land to the Railroad's predecessor. The granting clause "conveyed and quitclaimed * * a strip of land 50 feet in width on each side of the center line of the track," which covered a distance of 502 feet and contained one and fifteen hundredths acres. The consideration was $100 and the habendum clause recited that the grantee was "to have and to hold * * * for railroad purposes only." In 1865 Camp conveyed his fee simple in the 71 acres of land to Jacoby *1003 for $1,400, "excepting certain rights of the Railroad in 1.15/100 acres thereof."
In 1870 Jacoby conveyed an interest in the land to the Railroad. The granting clause "granted * * * for the uses and purposes hereinafter stated and none other, * * * a strip of land 50 feet wide" on each side of the center line of the track, which covered a distance of 1,090 feet.[1] The consideration was $500 and the habendum clause recited that the grantee was "to have and to hold said strip of land * * for railroad uses and purposes and none other as fully and amply and not more so as if the same had been taken by condemnation * * *." Jacoby's fee-simple interest passed on to successive grantees. The last deed, the one under which appellants claim, transferred the fee "subject to the right of way of the Railroad."
The Railroad is a common carrier by rail, and in 1870 and since that time has operated a main line to Rockford. From Rockford to Caledonia, a distance of 14 miles, it established a branch line, carrying freight and passengers. As time passed, the character of the neighborhood through which this branch line operated, changed from one mainly agricultural to one mainly industrial. The branch line moved in a northeasterly direction from Rockford 2½ miles to the intersection of Auburn and North Second Street, from there 3 miles to Larson Sand Pit, and then 8½ miles to Caledonia. Along the 5½ miles of track from Rockford appeared factories and plants.
With the industrial depression came financial difficulties, and the Railroad sought reorganization in the District Court, where an effort was made to place the Railroad on a profitable basis. In 1937 the Railroad obtained the proper administrative permission to abandon part of the branch line in question, the 8½ miles of track on the Caledonia end. And this was done, with the result that now the Railroad only operates the more profitable 5½ miles of track on the Rockford end.
At the present time the line mostly serves the many private industries located thereon, and the area in general is rich in potential industrial development. Switch tracks, team tracks and sidings connect these plants to the line. Furthermore, the line is available to the public for shipping purposes and the record indicates that individuals other than the private industries above mentioned, have availed themselves of the freight service. Although this line no longer carries passengers, its business amounted to $200,000 in 1937.
In 1937 the Railroad leased a portion of its right-of-way to James E. Lockwood for a "bulk oil station and retail filling station." The lease contained a clause empowering either party to terminate the lease by giving 30 days' notice, and excepted and reserved from its operation a strip of land 17 feet wide (or 8½ feet on each side of the tracks).
Photographs in evidence indicate the use to which the leased property has been devoted. There is a private service station west of the tracks, with the gasoline pumps east of the tracks. The land has been filled in, so that automobiles may travel on and over the tracks. South of the station and west of the tracks are two tank cars set on concrete blocks, which bear the notation "Tank Car Station" and the explanation "22,000 Gal. Gas Wholesale to Everyone." Directly across from the tank cars, east of the tracks and very close thereto, stands an embankment serving as one side of the driveway to and from North Second Street.
After answers were filed to appellants' amended petition, the matter was referred to a special master, who after taking proofs *1004 filed his report and included therein findings of fact and conclusions of law, holding that the Camp deed conveyed a fee; that the Jacoby deed did not supersede the Camp deed; that there had been no abandonment of the line; that the lease was lawful and the premises were included within the Camp deed;[2] and that the appellants were not entitled to the relief sought. Exceptions filed thereto were over-ruled by the District Court, a decree dismissing the petition was entered, and appellants have appealed.
Since the summary jurisdiction of the bankruptcy court is the sole ground of Federal jurisdiction in this cause, it is pertinent that we first consider whether that court abused its discretion in entertaining the intervening petition of the appellants. Thompson, Trustee, v. Magnolia Petroleum Co. et al., 309 U.S. 478, 60 S. Ct. 628, 84 L.Ed. 876. In the instant case, as in the Magnolia case, supra, the court of bankruptcy was faced with the interpretation of instruments of conveyance in accordance with Illinois law. But the congruity goes no further. Neither applicable statutes nor decisions of Illinois were available at the time Thompson v. Magnolia was before the Supreme Court. And the difficulties of determining just what should be the decision under Illinois law were persuasively indicated by the different results reached by the two Circuit Courts of Appeal that had attempted the determination. The Supreme Court refused to resolve this conflict in order that the important question of property law might not  by the accident of Federal jurisdiction  be resolved in a way that might prove contrary to the result of some subsequent state court decision. Accordingly, the Court held that the bankruptcy court had abused its discretion by not sending the matter to the appropriate state court. However, in our case, no more uncertainty attends the disposition than is present in the decision of most legal questions. Clearly, in the light of recent Illinois decisions, there is no such uncertainty as to require sending the case to the state court. If the matter at this stage were referred to the state court, the one certain result would be an increase in the costs of litigation, costs which would diminish the estate of the bankrupt. To refer to the state court every land question arising in bankruptcy would be to disregard the very objectives of the summary jurisdiction granted to the bankruptcy court. Such was not the rule of the Magnolia case. Under the facts and circumstances of this cause, it is our duty "to ascertain from all the available data what the state law is and apply it." West v. American Tel. & Tel. Co., 311 U. S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956.
The appellants contend that the words "for railroad purposes only," contained in the habendum of the Camp deed, made that instrument a conveyance of an easement and not of a fee simple title to the land. The disagreement in the construction *1005 of the deed revolves around the effect to be given to these controversial words.
At the outset, we must determine the rules of construction applicable to the deed. The general rule at common law was that where the habendum tended to cut down the estate given by the granting clause so that two repugnant estates were granted, the granting clause prevailed over the habendum and the latter became of no effect. Today, this rule is applied in Illinois to deeds where words of inheritance are used. Bear v. Millikin Trust Co., 336 Ill. 366, 168 N.E. 349, 73 A.L.R. 173; Tallman v. Eastern I. & P. Ry. Co., Ill. Sup., March 17, 1942, 41 N.E.2d 537. However, if no words of inheritance are used, § 13 of the Conveyances Act[3] requires that every word, no matter where situated in the deed, be given weight in determining the estate granted. Bauman v. Stoller, 235 Ill. 480, 85 N.E. 657; Magnolia Petroleum Co. v. West, 374 Ill. 516, 30 N.E.2d 24, 136 A.L.R. 372; Tallman case, supra.
The grant in the Camp deed was to the trustee of the Kenosha, Rockford and Rock Island Company "or his successor forever." These words were not words of inheritance in the strict common law sense. Baker v. Scott, 62 Ill. 86, 97; Brelie v. Klafter, 342 Ill. 622, 628, 174 N.E. 882; West v. Fitz, 109 Ill. 425, 436; Coogan v. Jones, 278 Ill. 279, 282, 115 N.E. 877; Metzen v. Schopp, 202 Ill. 275, 284, 67 N.E. 36; Patterson v. McCoy, 313 Ill. 491, 492, 494, 145 N.E. 87; Kales, Future Interests, 2nd Ed., § 11. We are therefore required under Illinois law to apply the liberal rules of construction which were reaffirmed by the Illinois courts as recently as the Tallman case, supra.
We must examine the entire deed to ascertain what estates the parties to the Camp deed intended to convey. It will be of help in this effort to consider the state of the property, the situation of the parties, and the objects to be attained. Goodwillie Co. v. Commonwealth Electric, 241 Ill. 42, 89 N.E. 272. At the time of the grant, the land was farm land and the strips here involved were long and narrow, but relatively small in acreage. Although the grantor was willing to surrender dominion of these strips which flanked the track, he saw fit to provide that the railroad was "to have and hold the land for railroad purposes only." It would seem reasonable that the grantor meant the railroad could use the strips, but only for the expressed purposes. Such an interest to the railroad could "well co-exist and be enjoyed and used by the grantee consistently with the ownership of the fee * * *." Waller v. Hildebrecht, 295 Ill. 116, 128 N.E. 807, 809. The words in the habendum were more than descriptive of purpose: they were the essence of the whole grant made by Camp; they were intended to describe the estate. We must therefore hold that the Camp deed gave the railroad only an easement. Tallman case, supra.
Appellees cite Carter Oil Co. v. Welker, 7 Cir., 112 F.2d 299; Downen v. Rayburn, 214 Ill. 342, 73 N.E. 364, 3 Ann.Cas. 36; Tinker v. Forbes, 136 Ill. 221, 26 N.E. 503; and Board of Supervisors of Warren County v. Patterson, 56 Ill. 111, as authority for the proposition that a fee was given. It is sufficient to say that the Tallman case makes any discussion of these cases unnecessary.
Appellants argue that a proper railroad purpose requires that the servient land be used for a public use, and that in the instant case the branch line serves merely a private use. Limits Industrial R. Co. v. American Spiral Pipe Works, 321 Ill. 101, 107, 151 N.E. 567; and Chicago & E. I. R. Co. v. Wiltse, 116 Ill. 449, 454, 6 N.E. 49.
In the instant situation appellant's argument is not compelling. At the most the evidence, adduced on the use made of the right-of-way, is conflicting. In this regard we do not deem it material that the line in question be denominated a spur-track by some and a main running lead track by others. The facts show that a railroad operates 5½ miles of track, carries over it an impressive volume of freight, and makes freight service available to the public as well as to certain private industries. We conclude that there was substantial evidence to support the finding that the line had not been abandoned.
The master correctly found that the leased premises were within the Camp deed.
*1006 But one question remains and that is whether the lease to Lockwood was a proper use of the servient land.
The distinction between what is a proper and an improper use is not always clear and is often a question requiring nice discriminations. "`A transaction may prima facie appear to be wholly foreign to the business for which a corporation was formed, and yet if it be auxiliary to any legitimate purpose of the company and adapted to carry out the same more advantageously, is impliedly authorized.'" Illinois Cent. R. Co. v. Wathen, 17 Ill. App. 582, 587.
The evidence clearly discloses that the use of the leased premises is for an ordinary retail filling station, notwithstanding the language of the lease. The question to be determined is whether a retail filling station is a misuse of the servient land. Illinois has recognized uses which facilitate the railroads' business, but certainly the fact that a business receives its goods by rail is not a conclusive determination that the use of easement land by the business is a proper one and not a burden. In fact, the Supreme Court of Illinois in Rock Island & P. Ry. Co. v. Leisy Brewing Co., 174 Ill. 547, 559, 51 N.E. 572, 576, expressly approved the doctrine in Lance's Appeal, 55 Pa. 16, 93 Am.Dec. 722, that: "No one can pretend that a railroad company can build private houses and mills, and erect machinery, not necessarily connected with the use of their franchise, within the limits of their right of way. If it could, stores, taverns, shops, groceries, and dwellings might be made to line the sides of the road outside of the track,  a thing not to be thought of under the terms of the acquisition of the right of way."
The problem is always one of degree. In the instant case the filling station was not an incident to the legitimate use of the easement; it was the use itself. Clearly, it may not exist under the terms of the easement. To hold that it was proper would be an open invitation to abuse.
We note without comment that a bulk station was held to be a proper use in Weir v. Standard Oil Co., 136 Miss. 205, 101 So. 290, but that is not our case.
The judgment of the District Court will be reversed and the cause will be remanded to that court for further proceedings in conformity with this opinion.
NOTES
[1] The Camp deed described strips of land 50 feet wide, on each side of the center line of the tracks. These tracks ran almost parallel to a highway, except that the tracks curved slightly. This caused the easterly strip of land to extend 25 feet into the highway at the strip's southerly end, creating at that point a triangular shaped piece of land (T-1) entirely within the limits of the highway. See f. n. 2. In its entirety the deed described land 100 feet wide and 502 feet long.

The Jacoby deed also described strips of land on each side of the center line of the tracks. It included the same 50 foot strip of land, the westerly piece, as in the Camp deed. In addition it extended this piece 588 feet. The Jacoby easterly strip of land included the Camp easterly piece except the highway triangle (T-1). In addition it included a triangular piece of land at the strip's northerly end (T-2) and extended the strip 588 feet. See f. n. 2. In its entirety this deed described land 100 feet wide, more or less, and 1090 feet long, in effect covering the land described by the Camp deed and some in addition.
[2] See footnote 1. Below is a diagram, not necessarily exact as to distances and directions, which presents our problem in picture form. Camp deed covered the points A, B, C, D. The Jacoby deed covered the points A, E, F, G.

[3] Ill.Rev.Stat.1941, Chap. 30, § 12.