**In re RUSTY JONES, INC., Debtor.**

**INDIANA LUMBERMENS MUTUAL INSURANCE CO., Plaintiff,**

v.

**RUSTY JONES, INC., Reorganized Debtor, Glenn R. Heyman, Trustee of Creditors' Grantor Trust, Donald J. Hanaway, as Attorney General for the State of Wisconsin; Robert D. Haase, as Commissioner of Insurance for the State of Wisconsin; and Wisconsin warranty holders, Defendants.**

Bankruptcy No. 88 B 18708.
Adv. No. 90 A 0594.

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 13, 1991.

See also 110 B.R. 362.

Sara Cook, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for plaintiff Indiana Lumbermens Mut. Ins. Co.

Glenn R. Heyman, Dannen, Crane, Heyman & Simon, Chicago, Ill., Trustee.

Norman Newman, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for debtor-defendant Rusty Jones.

William Wolford, Wis. Dept. of Justice, Madison, Wis., for defendants Donald J. Hanaway, as Atty. Gen. for State of Wis. and Robert D. Haase, Com'r of Ins. for the State of Wis.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR DISCRETIONARY ABSTENTION

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Indiana Lumbermens Mutual Insurance Company ("Lumbermens") filed this Adversary Complaint seeking declaratory judgment, interpleader, and injunctive relief with regard to its obligations on rust-proofing warranties issued to persons in Wisconsin by the debtor, Rusty Jones, Inc. ("Debtor"). Defendants Donald J. Hanaway, Attorney General of the State of Wisconsin ("Attorney General"), and Robert D. Haase, Commissioner of Insurance of the State of Wisconsin ("Insurance Commissioner") (collectively, the "Defendants") have moved the Court to abstain from hearing a portion of the Adversary Proceeding in order to allow a Wisconsin state court to determine one specified issue under Wisconsin law ("Motion"). Defendants have moved for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1), so that some party could file suit in Wisconsin courts to resolve that issue. No such suit has yet been filed.

Following hearing, and having considered the argument of counsel and pleadings and materials filed, for reasons stated below Defendants' Motion is denied.

## UNDISPUTED FACTS

Prior to commencement of Debtor's related bankruptcy proceeding, it was in a business that included selling rust-proofing warranties for automobiles. On June 16, 1986, Debtor and Lumbermens entered into an automobile rust-proofing warranty bond, in the aggregate penal sum of $500,000 ("Bond"). The purpose of the Bond was to secure payment of valid claims on rust-proofing warranties issued in the State of Wisconsin by Debtor, as required by Wisconsin law. The Bond, whose obligee was the State of Wisconsin, was delivered to and accepted by the Insurance Commissioner. Debtor allegedly wrote at least 38,000 warranties to residents of the State of Wisconsin during the bond period ("Wisconsin warranty holders").

At the time the Bond was issued, Debtor executed a general agreement of indemnity which provided security in the amount of $500,000, and further provided that Debtor would indemnify Lumbermens for any and all alterations, modifications, renewals, continuations, and extensions of the Bond made during the bond period.

On December 5, 1988, Debtor filed its petition for bankruptcy under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. ("Code"). On April 11, 1989, this Court entered an order requiring that all warranty claims must be filed on or before December 1, 1989 or be forever barred.

Upon request of the Insurance Commissioner, on or about July 31, 1989 the Attorney General issued an opinion letter ("Opinion Letter"). The Opinion Letter responded to the Insurance Commissioner's concerns that the potential claims on the warranties issued in Wisconsin by Debtor during the bond period would exceed the penal amount of the Bond. The Attorney General opined that the Bond could be reformed under Wisconsin law to cover all valid claims by the Wisconsin warranty holders if the aggregate amount of claims exceeded the $500,000 penal sum of the Bond. In support of his opinion, the Attorney General examined certain Wisconsin statutes and authorities.

On March 6, 1990, this Court entered an order confirming Debtor's Fifth Amended Plan of Reorganization as modified ("Plan"). The holders of Rusty Jones rust-proofing warranties were classified as Class 5 claims under the Plan, while the Wisconsin warranty holders were separately classified as Class 5B claimants. The Plan provided:

> All issues concerning the rights and responsibilities of Lumbermens ... to Wisconsin warranty holders, including but not limited to what, if any, additional security or monies, over the face amount of the bond currently posted with the state of Wisconsin ... and the status of the Sureties' claims arising from any such additional security or monies are expressly reserved for further requested adjudication by the Bankruptcy Court of the Northern District of Illinois.
>
> ....
>
> ... [T]he Plan ... shall [not] impair or limit any party's right (1) to litigate the rights and responsibilities of Sureties or ... (3) to argue that the Bankruptcy Court or the District Court for the Northern District of Illinois should not hear these issues....

The Bankruptcy Court or the District Court for the Northern District of Illinois shall retain jurisdiction over all matters raised hereunder; provided, however if it is determined that the Bankruptcy Court or the District Court ... lacks jurisdiction, or said courts decline to hear these matters; these matters may be raised before any court of competent jurisdiction.

On or about October 31, 1989, Lumbermens filed a Motion for allowance of its Administrative Claim. Such administrative claim would constitute whatever amount Lumbermens would be required to pay in excess of the penal amount of its Bond. The administrative claim is asserted to be a Class 1 claim under the Plan that would entitle Lumbermens to administrative priority for post-petition payments on behalf of Debtor or for payments under the assumed contract of Debtor. That claim has not been resolved.

In this Adversary proceeding, Lumbermens filed its Second Amended Adversary Complaint ("Complaint") seeking declaratory relief, interpleader, and injunctive relief, in addition to certification of a purported class of Wisconsin warranty holders.[1] The Defendants have filed their Answer thereto. The pleadings in this Adversary proceeding raise the following issues:

—whether Defendants can reform the Bond to conform to Wis.Rev.Stat. 100.-205(b) so that Lumbermens is obligated to pay in excess of the penal amount of its Bond;

—whether Section 365(c)(1)(B)(2) of the Bankruptcy Code precludes such enlargement of debtor's liability;

—whether the Bankruptcy Code preempts the Wisconsin statute;

—whether, if Lumbermens must pay in excess of the Bond amount, it is entitled to indemnification from Debtor for such excess amount, and whether such excess amount should be allowed as an administrative claim;

—whether Lumbermens can interplead the sum of $500,000, the amount of its Bond, in return for release of all liability under the Bond and injunction against Wisconsin warranty holders from enforcing any statutory right they might have against Lumbermens; and

—whether the Wisconsin warranty holders, as claimants, are entitled to a pro rata share of the Bond proceeds pursuant to the interpleader, or whether they should be paid on a first come, first serve basis.

In response to Lumbermens' First Amended Adversary Complaint, which was filed September 18, 1990, Defendants filed the instant Motion for Permissive Abstention on September 21, 1990 ("Motion"). Through statements of counsel on the record, they ask that their Motion stand as

---

**1.** Lumbermens has since filed a separate Motion for Class Certification which the Court has un-der advisement and will pass on separately.

to Plaintiff's pending Second Amended Adversary Complaint filed subsequently. In the Motion, Defendants contend, with regard to the question whether the Bond can be reformed under Wisconsin law in order to compel Lumbermens to pay in excess of the Bond amount (the "state law issue"), that the elements of 28 U.S.C. § 1334(c)(1) have been met and such issue should be heard by a Wisconsin state court. It is clear that neither this Court nor the District Court may, under Wisconsin law, certify that issue to the Wisconsin court even if it were found susceptible to such certification. Wis.Stats. § 821.01.

## DISCUSSION

1. *The Court has core jurisdiction over all aspects of this Adversary case.*

 It is appropriate to consider this Court's jurisdiction before reaching the abstention issues. United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each District Court is authorized to refer such proceedings to bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such referral pursuant to Local District Rule 2.33.

In a core proceeding that arises in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). The issue of whether Lumbermens must pay in excess of the amount of its Bond will be determined pursuant to Wisconsin law, and hence by itself does not arise under Title 11. However, that issue is inextricably tied to the remaining issues to be resolved in the Adversary Proceeding which do clearly arise under Title 11.

The insurance policy secured by Lumbermens is property of Debtor's estate under the expansive definition set forth in Section 541 of the Code[2]. *In re Titan Energy, Inc.,* 837 F.2d 325, 329 (8th Cir.1988) (in which the court referred to the "broad scope" of Section 541(a)(1)); *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553 (1st Cir.1986); *A.H. Robins v. Piccinin,* 788 F.2d 994 (4th Cir.1986); *In re Davis,* 730 F.2d 176 (5th Cir.1984). Furthermore, Debtor is the named insured, and Lumbermens insists that Debtor would be a necessary party to any state court proceeding to determine Lumbermens' obligation to pay in excess of the Bond amount. *See Titan Energy,* 837 F.2d at 328–29 (in which the court observed that although the debtor's interests in certain insurance policies were "somewhat attenuated," debtor nevertheless was the named insured and therefore the policies were property of debtor's estate). Core jurisdiction therefore lies over administration of estate property under 28 U.S.C. § 157(b)(2)(A) and (O).

Moreover, the state law issue necessarily affects other issues in the Complaint which arise under Title 11. If Defendants were to prevail in state court, although the proceeds of the excess coverage claimed by Defendants would not flow directly into the coffers of the estate, the proceeds would result in a more extensive distribution to the Class 5B claimants under the Confirmed Plan. Thus, resolution of the proposed (but as yet unfiled) state court proceeding would directly impact the distribution to Class 5B claimants and other claimants. This Court cannot enforce terms of the confirmed plan as it has core jurisdiction to do under 28 U.S.C. § 157(b)(2)(A) and (L) and 11 U.S.C. § 1142(b) unless the issue under state law is first decided.

In addition, if the asserted excess coverage exists, that would implicate certain issues of bankruptcy law. First, Lumbermens argues that because 11 U.S.C. § 365(c)(1)(B)(2) would prohibit such a postpetition financial accommodation, a question of preemption under the Supremacy Clause of the United States Constitution would arise. Second, if it is determined that Lumbermens is responsible for excess

**2.** Section 541 includes within a debtor's estate "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

coverage, Lumbermens also asserts that it is entitled to an administrative or general post-petition unsecured claim in the amount of the excess coverage. Clearly such claim would directly affect the amount and timing of any distribution, not only to the Wisconsin warranty holders, but to all creditors of the estate. Moreover, resolution of Plaintiff's asserted administrative claim is within this Court's core jurisdiction. 28 U.S.C. § 157(b)(2)(B).

The Fifth Amended Plan of Reorganization ("Plan"), as confirmed, itself provides that "[a]ll issues concerning the rights and responsibilities of Lumbermens ... including ... what ... over the face amount of the [Bond] is owed by [Lumbermens]" are "expressly reserved for further requested adjudication by the Bankruptcy Court...." The Plan also provides that the Bankruptcy Court "shall retain jurisdiction over all matters raised hereunder...." Thus, this Court must maintain its jurisdiction to implement the provisions of the Plan. Prosecution of a cause of action such as the instant Adversary Proceeding is an integral element of administration of this bankruptcy estate as provided for in the Plan. *See also In re Tennessee Wheel & Rubber, Co.,* 64 B.R. 721, 727 (Bankr.M.D.Tenn.1986) (in which the court reasoned that it had core jurisdiction over certain avoidance actions because "[j]urisdiction to complete the[ ] adversary proceedings was retained by confirmation of debtor's plan"). Thus, the Plan recognizes that the Lumbermen's insurance of warranties provided by Debtor constitutes a major asset of the estate. As such, it is the primary means whereby an effective administration of Debtor's bankruptcy estate can be accomplished for the benefit of the Class 5B claimants.

Resolution of the state law issue will necessarily have a direct impact upon further administration of the estate. Viewed from a substantive and realistic perspective, the state court issue is a core proceeding. Indeed, this Court has core jurisdiction over the entire Adversary Proceeding, including the issue of excess insurance coverage.

### 2. *Discretion to abstain should not be exercised in this case.*

■ Permissive or discretionary abstention is addressed in 28 U.S.C. § 1334(c)(1) which provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

In contrast to mandatory abstention under 28 U.S.C. § 1334(c)(2), discretionary abstention applies to both core and non-core matters. 1 *Collier On Bankruptcy* ¶ 3.01[3][a] (15th ed. 1989) at 3–68.

■ Authority in this District properly holds that the discretionary abstention provision, unlike the mandatory abstention provision, allows the Bankruptcy Court to render a final decision to abstain. *In re Pankau,* 65 B.R. 204, 209 n. 6 (Bankr.N.D.Ill.1986) (Ginsberg, J.). *Pankau* pointed out that the mandatory abstention provision contains a limitation on appealability of an order to abstain, which thus gives rise to a question as to whether an Article I bankruptcy judge can constitutionally enter a final but nonappealable order. However, under Bankruptcy Rule 5011(b), there is no similar limitation on appeal from an order for discretionary abstention under 28 U.S.C. § 1334(c)(1). *See also In re Williams,* 88 B.R. 187, 188 n. 2 (Bankr.N.D.Ill.1988) (Ginsberg, J.). However, should a higher court determine that this Court cannot render a final decision with regard to permissive abstention, *see e.g., In re Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc.,* 81 B.R. 422, 426 (Bankr.S.D.Tex.1987), this Memorandum Opinion stands as a recommendation to the District Court for denial of the Motion for Abstention.

■ Courts have looked to and balanced many factors in determining whether abstention is appropriate under Section 1334(c)(1), including: (1) the effect or lack thereof on efficient administration of the estate, (2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficulty or unsettled nature of applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,[3] (9) the burden of the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, and, (11) the presence in the proceeding of nondebtor parties. *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). The mere fact that a bankruptcy court must apply state law by itself does not justify discretionary abstention since abstention is "a narrowly applied exception to the broad jurisdictional grant afforded bankruptcy courts." *In re Wilson*, 85 B.R. 722, 726–27 (Bankr.E.D.Pa.1988).

When most of the criteria for mandatory abstention have been met, bankruptcy courts should give "careful consideration whether it would be appropriate to exercise their discretion to abstain under § 1334(c)(1)." *In re Futura Indus., Inc.*, 69 B.R. 831, 834 (Bankr.E.D.Pa.1987). As the language in Section 1334(c)(2)[4] indi-

cates, if the following four requirements are satisfied, a court must abstain upon timely motion: (1) the case is based on a state law claim or cause of action that, although related to a case under Title 11, does not arise in Title 11 or arise under a case under Title 11; (2) there is no independent basis for federal jurisdiction for the claim other than the bankruptcy proceeding; (3) an action that could dispose of issues before the Bankruptcy court has been commenced in a state forum; and (4) the case could be timely adjudicated in state court. *Bates & Rogers Construc. Corp. v. Continental Bank, N.A.*, 97 B.R. 905, 907 (N.D.Ill.1989). Defendants argue that with the exception of the requirement for pending state court proceeding,[5] the elements of mandatory abstention have been or could be met, and hence discretionary abstention is appropriate.

■ The Court disagrees. First, the entire Adversary Proceeding is a core proceeding. The case is based not only upon one issue under state law, but rests primarily upon rights asserted to arise under bankruptcy law. As discussed previously, although the state law issue must be decided, its resolution will have a direct impact upon Lumbermens' rights and liability under bankruptcy law, and claimants' rights with regard to the distribution of assets. Indeed, absent extraordinary circumstances, this Court's duty under federal law requires it to determine core matters

---

**3.** Lumbermens argues that abstention is not appropriate unless the entire proceeding can be remanded to the state court, or, that abstention can only apply to an entire case, not to a single question of law. However, Lumbermens has not cited authority directly in support of that broad contention. To the contrary, courts have found partial abstention sometimes appropriate where divisible state law claims are pendent to matters best left for resolution by the bankruptcy court. *Republic,* 81 B.R. at 427; *In re Richmond Tank Car Co.,* 119 B.R. 124, 127 (Bankr. W.D.Mich.1990) (in which the court found issues in an adversary proceeding to be "readily severable from the main bankruptcy herein" because the "issues [were] already separate for all practical purposes from the main bankruptcy case").

**4.** Mandatory abstention is addressed in Section 1334(c)(2), which provides in part:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2).

**5.** Absence of a pending state court action is a factor only with regard to mandatory abstention, not discretionary abstention. Lumbermens cites to cases where the court found absence of a pending state court action to have weighed against mandatory, rather than discretionary abstention. *See, e.g., In re Aristera Corp.,* 65 B.R. 928 (Bankr.N.D.Tex.1986).

properly before it. *In re Hughes–Bechtol, Inc.*, 107 B.R. 552, 560 (Bankr.S.D.Ohio 1989). In any event, the first requirement for mandatory abstention has not been met.

■ Second, in light of the particular circumstances of this bankruptcy case and representations of Wisconsin counsel before the bench, the Court concludes that the state law issue could not be "timely" adjudicated in state court, and indeed would cause a significant delay in the administration of this case. Timely adjudication is not only a requirement for mandatory abstention. It is also a factor which is weighed heavily in determining whether to exercise discretion to abstain. *See In re Williams*, 88 B.R. 187, 191 (Bankr.N.D.Ill. 1988) (Ginsberg, J.) ("[t]he Court recognizes that delay is a relevant factor in determining whether or not to abstain"); *In re Krupke*, 57 B.R. 523, 529 (Bankr.W.D.Wis.1986) (in which the court granted the requested abstention after finding there was no showing that resolution of the matter in state court would "unduly delay the administration of the estate").

"Where there is a conflict between a bankruptcy court administering a complex reorganization and other court proceedings, equity favors the unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction of other litigation." *In re Chateaugay Corp.*, 116 B.R. 887, (Bankr.S.D.N.Y.1990). Defendants have estimated that if a Wisconsin state court were to hear the state law issue, this bankruptcy proceeding would be delayed for up to two years (the length of time it would take for the state court to reach a decision and for the appeals process to be exhausted). This Court estimates that it can resolve all issues herein in three to six months if the litigation counsel prepare promptly. Furthermore, no state court proceeding has been commenced, whereas this Adversary proceeding has been before the Court for a number of months and motions have been briefed here. *See UNR Indus., Inc. v. Continental Ins. Co.*, 623 F.Supp. 1319, 1334 (N.D.Ill.1985) ("the rela-tively advanced state of these proceedings show that abstention would not be appropriate....")

More importantly, it is undisputed that a distribution to creditors, including payment under the Bond to the Wisconsin warranty holders, cannot take place until the state law issue is resolved. If Defendants prevail and Lumbermens must pay in excess of the $500,000, a distribution cannot take place until Lumbermens' indemnity rights, if any, are established, and its Motion for Allowance of Administrative Claim is decided. "Because administration or liquidation of the estate [can] take place only after the state action is resolved, a substantial likelihood exists that the estate and its creditors will suffer a lengthy and prejudicial delay." *In re Marshall*, 74 B.R. 651, 656 (N.D.Ill. 1987). This Court is particularly concerned with the factor of delay in light of the large number of claimants in the related bankruptcy case (over 250,000 in number) and the many bitter expressions of concern over delay that have been communicated by those claimants. Two years would constitute a significant delay in adjudication under these circumstances. Moreover, the estate now holds about $1,300,000 subject to administrative claims and distribution to creditors. While more may be recovered from a pending law suit, there will in all events be a distribution here. A two year delay in this litigation would delay that distribution. Consequently, the state law issue could not be "timely adjudicated" in state court. It is wholly inappropriate to link the pace of our work here to the uncertain timing of work in state courts under circumstances presented here.

Thus, contrary to Defendants' assertions, most criteria for mandatory abstention have not been met.

■ Apart from delay in efficient administration of the estate that is significant in determining whether to permissively abstain, another factor is whether a state court proceeding would affect the estate. In *Marshall*, the court observed that if a state court proceeding will have no effect on the estate, abstention is proper; however, where the proceeding will affect the

amount or existence of creditors' dividends, abstention is inappropriate. *Marshall*, 74 B.R. at 656.

In *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988), the court reviewed earlier Chapter 11 decisions where the bankruptcy court had retained its jurisdiction over a debtor's insurance policy and had stayed all state proceedings regarding the insurance.[6] *Titan* noted that in each case many creditors had sought benefit from debtor's insurance, the proceeds of which were inadequate to satisfy a large list of claimants. *Id.* at 330. *Titan* also found in each case that resolution of the relevant state court action could have depleted the insurance pool to the detriment of the remaining creditors. Thus, *Titan* concluded that aiding a debtor's reorganization effort was a strong reason for exerting jurisdiction over a debtor's insurance policy.

As in *Titan* and authorities it relies on, should Defendants prevail on the state law issue, the proceeds of the Wisconsin warranties may be inadequate to satisfy the many Class 5B claims. Furthermore, if Lumbermens must pay in excess of the Bond amount and also succeeds in gaining an administrative or unsecured claim for that excess amount, such state court judgment could deplete the Creditors Trust to the detriment of all non-Wisconsin creditors.

Defendants argue that abstention here will not hinder Debtor's reorganization efforts because Debtor's Chapter 11 Plan provides for liquidation. However, the concerns outlined in *Titan* remain relevant here despite confirmation of Debtor's liquidating Plan. Debtor's Plan provides for classification of creditors and distribution of the estate's assets. The importance to creditors of a timely distribution in this or any bankruptcy case is manifest. Therefore, the concerns regarding the effect of abstention upon the estate which the *Titan* court examined are also concerns here.

As discussed previously, if a state action were allowed to proceed, the most serious and immediate adverse effect upon the estate would be significant delay in resolution of the Adversary issues in ultimate distribution to creditors, including the Wisconsin warranty holders. Clearly abstention over the state law issue would "impede or disrupt the bankruptcy court's exclusive and non-delegable control over the administration of the estate within its possession," *Republic*, 81 B.R. at 426, and would likely delay resolution of issues remaining before the bankruptcy court.

■ Another factor which courts weigh heavily in determining whether to allow permissive abstention is whether a party can direct the court to any "unsettled or particularly difficult or complex issues of state law which ... might be better addressed by the state court." *In re U.S. Aviex Co., Inc.*, 96 B.R. 874, 882 (N.D.Ind. 1989); *In re Williams*, 88 B.R. 187, 191 (Bankr.N.D.Ill.1988) (Ginsberg, J.) ("courts have continued to find that abstention is best where there are novel or unsettled questions of state law to be decided"); *In re Wells Properties, Inc.*, 102 B.R. 685, 692 (Bankr.N.D.Ill.1989) (Wedoff, J.) ("Courts have abstained ... in proceedings that raised novel or unsettled issues of state law, without raising significant issues of bankruptcy law...."). Defendants argue that because no Wisconsin court has construed the Wisconsin statute upon which the Attorney General based his Opinion Letter, the issue of whether Lumbermens must pay in excess of the Bond amount is a novel and unsettled question of state law suitable for adjudication by a Wisconsin state court. The Court disagrees.

First, the state law issue is neither unusually complex nor is it "unsettled" as the latter concept is used in opinions favoring abstention. Certainly the Wisconsin Attorney General did not appear to think so when he drafted his Opinion Letter. Both Lumbermens and Defendants have informed the Court that the issue is simply

---

6. The *Titan* court reviewed *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553 (1st Cir.1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir.

1986); *In re Davis*, 730 F.2d 176 (5th Cir.1984); and *In re Johns–Manville Corp.*, 40 B.R. 219 (S.D.N.Y.1984).

an ordinary matter of statutory interpretation. The language of the relevant statutes, Wis.Rev.Stat. §§ 100.205, 631.01(4m), 632.18 [7] does not appear to pose special mysteries under Wisconsin law. Indeed, the Attorney General contends in the Opinion Letter that the language of the statutes is unambiguous. Moreover, the Attorney General cited Wisconsin precedent in his Opinion Letter in support of the view that "Wisconsin courts have traditionally construed bonds and other insurance policies so as to ensure compliance with state law regardless of the terms actually contained therein." *See* Opinion Letter. There is no conflicting judicial authority on the matter, indeed no Wisconsin court decisions at all directly on the statutes in question.

██ Even if there is an absence of state court judicial authority directly on point, such absence "does not necessarily mean that the law is so unsettled as to require submission of the issue to a state tribunal." *In re Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 654 F.2d 1218, 1221 (7th Cir.1981). In *Chicago*, the Seventh Circuit reasoned that a bankruptcy court is qualified to decide a suit where "no more uncertainty attends [its] disposition than is present in the decision of most legal questions ... or where the law bearing on the same question in other contexts is reasonably clear...." *Id.* at 1222, quoting in part *In re Chicago & Northwestern Ry. Co.*, 127 F.2d 1001, 1004 (7th Cir.1942) (in which the court observed that "to refer to the state court every land question arising in bankruptcy would be to [increase the costs of litigation and] disregard the very objectives of summary jurisdiction granted to the bankruptcy court").

With regard to the state law issue here, no Wisconsin courts have differed on the question, nor have those courts intimated that the statute would be inapplicable in the context before this Court. Nor has the matter in any way been questioned by the Wisconsin state legislature. *See Chicago*, 654 F.2d at 1222. Thus, even if there is no direct state court authority on the issue of excess coverage, resolution of the issue is not connected with any more uncertainty than attends the decision of most legal questions. *See Id.* Problems before bankruptcy judges in this District, and throughout the nation, frequently raise issues under state law. Were that fact alone to warrant abstention, our courts would soon grind to a slow crawl while awaiting definitive state court decisions.

Because the state law issue here is neither unusually difficult or "unsettled", Defendants' contention that abstention is warranted pursuant to *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is also without merit. In *Pullman*, the Supreme Court held that federal courts should abstain from decision where difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. *See Hawaii Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (in which the court construed the holding in *Pullman*). Furthermore, "by abstaining in such cases, federal courts will avoid ... unnecessary adjudication of the federal constitutional question." *Id.* Thus, abstention under *Pullman* focuses more on avoiding federal constitutional questions than on considerations of comity with state courts. *Republic Reader's*, 81 B.R. at 424, n. 2. *Pullman* is even less applicable here since the question of preemption cannot be avoided by removal to state court in the event Defendants prevail.

Finally, the parties have raised another factor enumerated in *Republic* which clearly indicates that the court should not exercise its discretion to abstain. In *Republic*,

---

7. Section 100.205(6) provides in part:
Every warrantor shall purchase a policy of insurance covering the financial integrity of its warranties....
 (b) Each warranty issued in this state shall be covered by a policy of insurance.
 (c) In case of insolvency or bankruptcy of the warrantor, a warranted party may file a claim directly with the insurer.

Section 632.18 of Wis.Rev.Stat. provides in part:
Rustproofing warranties insurance. A policy of insurance to cover a warranty ... shall fully cover the financial integrity of the warranty.

the court looked to "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court." *Republic*, 81 B.R. at 429. As discussed previously, the Court does not find the state law issue to be a distinct issue unconnected to other issues in the Adversary case and bankruptcy, since its resolution necessarily affects Lumbermens' rights and liability under bankruptcy law, and claimants' rights with regard to the distribution of assets and amount of available insurance.

Several factors strongly indicate that permissive abstention would not be appropriate here. Abstention would serve only to impede a prompt resolution of this Adversary Proceeding, a resolution vitally important to the creditors of the estate. Therefore, the entire Adversary Proceeding, including the resolution of the state law issue, will proceed in this Court.

### CONCLUSION

Accordingly, by separate order Defendants' Motion for Permissive Abstention pursuant to 28 U.S.C. § 1334(c)(1) is denied. Should this Court lack authority to make that decision, this opinion will stand as a recommendation to the District Court to deny abstention.