Daniel Da SILVA, et al., Plaintiffs,

v.

AMERICAN SAVINGS, et al., Defendants.

Civ. A. No. H–92–477.

United States District Court, S.D. Texas, Houston Division.

Sept. 10, 1992.

**10**

James R. Moriarty, Houston, Tex., for plaintiffs.

Charles L. Babcock, Houston, Tex., for defendants.

## OPINION ON REMAND

HUGHES, District Judge.

### 1. Introduction.

Having been sued in state court by people who bought houses from General Homes, the banks removed the action on the ground that it was related to the bankruptcy of General Homes. An independent case that touches transactions that also happened to be part of a bankruptcy is not removable. This case will be remanded.

### 2. Background.

In developing its subdivisions, General Homes Corporation borrowed money from several banks to build houses. The plaintiffs in this action are all people who had bought houses from General Homes. The buyers claim that the houses were structurally defective, mostly in the form of foundation problems. Originally, the buyers sued General Homes, but after it was forced into bankruptcy, the buyers then sued the bank group that had supplied General Homes with its line of credit. They also had sued a mortgage company, two warranty insurance companies, a contractor, and several officers of the companies. All of the state actions were consolidated in the state district court, and the banks removed the resulting action.

### 3. Chronology.

June 15 & 20, 1990  Buyers of houses sued General Homes in state court over foundation defects.

July 10 · Involuntary bankruptcy petition against General Homes.

August 17  General Homes consented to the bankruptcy, and relief under chapter 11 is entered.

January 15, 1991  FGMC, a General Homes subsidiary, filed under chapter 11; joint administration ordered.

June 12  Debtors filed the third amended plan of reorganization.

June 18  The buyers, as unsecured creditors, moved to disallow the claim of the bank group.

September 7 Buyers filed this case in state court seeking to impose liability for the defective houses on officers of General Homes individually and an insurance company.

September 12 Bankruptcy judge rendered a denial of the disallowance of the bank group's claims.

October 30 Court confirmed a reorganization.

January 6, 1992 Court entered order with an opinion denying the disallowance of the bank group's claims.

January 9 Buyers added the banks as defendants in this suit.

January 29 This case was consolidated with all of the state court cases.

February 14 The banks removed this case.

### 4. *Claims Pendente Lite.*

The buyer-plaintiffs have brought several classes of claims against several classes of defendants.

A. The buyers sued the builder and mortgage company (debtors) for the losses from the construction defects.

B. The buyers sued individuals who were officers of the builder and mortgage company.

C. The buyers sued the two insurance companies that backed the house warranties.

D. The buyers sued the subcontractor that provided foundations to the builder.

E. The buyers sued the bank group on the ground that the banks controlled the builder.

The parts of this suit that were on file at the bankruptcy and against the builder appeared as items in the statement of assets and schedule of assets and liabilities of the builder as a debtor. The buyers, who are the plaintiffs here, participated in the bankruptcy as unsecured creditors.

In effect, the buyers joined together in this action to impose liability for the defective houses on General Homes, its officers, an insurance company, and the bank group. General Homes and FGMC are named as defendants in this consolidated lawsuit, but they are not listed in the fifth amended petition; therefore, they are no longer parties.

### 5. *Bank's Position.*

The banks argue that the buyers' claims against them are barred by collateral estoppel and res judicata because the bankruptcy court already decided this issue during the bankruptcy when it allowed the bank group's claim over the buyers' objections. Before they get to argue that point before this court, however, the case must have been properly removed, giving this court jurisdiction.

### 6. *Related to What?*

The banks removed this action as a case that is related to a bankruptcy. 28 U.S.C. § 1334(b) (1986); 28 U.S.C. § 1452(a) (1989). This action, in their view, is related to the General Homes bankruptcy because the buyers are attempting to hold the banks liable for their banking conduct with General Homes. Essentially, this action seeks to hold the banks responsible for liabilities of the debtors because the banks had control of the debtors and abused that control.

The statute does not define what makes a case "related to" a bankruptcy. 28 U.S.C. § 1334(b). The statute is, however, an attempt at a standard. The proposition that a case that has mere echoes of a past bankruptcy is somehow related to that bankruptcy destroys any illusion of a standard. Congress did not intend to make all cases removable, no matter how distantly related to a dead proceeding.

Courts have inferred that a case "arises under" or is "related to" a bankruptcy only if it could conceivably have an effect on the bankruptcy estate. *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987). Although the claim does not need technically to be against the debtor or the property of the estate, the removal must be supported by an articulation of a plausible way the claim can have an impact on the *estate*, not

just on the debtor. *Wood*, 825 F.2d at 94; *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). Neither common issues, related parties, parallel claims, nor bankruptcy law applications make a case related to a bankruptcy for the purposes of removal jurisdiction. *Pacor*, 743 F.2d at 994; *Ledgedale of Pennsylvania, Inc., v. Carroll*, 478 F.Supp. 711, 713 (M.D.Pa.1979).

■ Nothing about the plaintiffs' suit against the banks will affect the bankruptcy estate. The creditors approved the reorganization plan, and the court confirmed the plan over five months ago. The estate is settled. When the courts have found that a case is related to a bankruptcy proceeding, the bankruptcy is underway, and the plan has not been confirmed. *See Wood*, 825 F.2d 90; *Pacor*, 743 F.2d 984.

The banks argue that because the plaintiffs attempt to tie the banks and General Homes together as a joint enterprise, an action against the banks may conceivably affect the bankruptcy estate. This argument fails for two reasons. First, the plan was confirmed, so these later suits cannot affect the estate. Second, it is not the banks' status as non-debtor defendants that makes this suit unrelated to the General Homes bankruptcy. *Pacor*, 743 F.2d 984. What makes this case unrelated is the absence of a conceivable effect on the bankruptcy estate.

Even if the buyers could be successful in their claim, the banks, as joint actors, would be jointly and severally liable for the harm done. The buyers could potentially collect 100% of their damages from the banks. The banks could then pursue General Homes for contribution. This state suit is only a precursor to the banks' potential contribution claims against General Homes. *Pacor*, 743 F.2d at 995; *In re Kennedy*, 48 B.R. 621, 622 (Bankr.D.Ariz. 1985). If the banks could be able to recover from General Homes, their potential contribution claim is not sufficiently related to the General Homes bankruptcy to justify removal jurisdiction. *Pacor*, 743 F.2d at 994–96. Any wrongdoing by the banks or recovery by the house buyers is indepen-

dent of the historical bankruptcy proceeding.

The only claim that was not heard directly by the bankruptcy court was the banks' potential contribution claim against General Homes. When the bank group made its claim against General Homes, the buyers objected on the grounds that the banks somehow controlled General Homes. Since the court allowed the bank group's claim, there was no need to reach a contribution claim; the loss of the control claim kept the bankruptcy court from having to consider it. If the buyers want to try to relitigate the control issue, they may make that attempt in state court.

### 7. *The Answer for the Banks.*

■ If the buyers persist in their renewed attack on the banks, the banks have an answer; the banks may plead res judicata and collateral estoppel as defenses in state court. They cannot claim that the plaintiffs' claims are related to the General Homes bankruptcy merely because the bankruptcy court already heard the claim. Similarly, if a note is discharged in bankruptcy, and the next day the holder sues on the note in state court, the only remedy for the debtor is to plead the discharge as a defense in state court. The debtor cannot remove the suit to federal court on the ground that the state suit relates remotely to the earlier bankruptcy proceeding or because bankruptcy law may determine the state suit result.

### 8. *Efficiency, Comity, and Common Sense.*

■ Federal jurisdiction over cases related to bankruptcy proceedings may be broad, but it is not indefinite, infinite, or available just by invocation. Federal courts have wide discretion whether to allow removal or remand a bankruptcy-related case. Even if a state court case is related to a bankruptcy, the federal court may remand it on equitable grounds. *Browning v. Navarro*, 743 F.2d 1069 (5th Cir.1984). Equitable grounds include judicial economy, comity, and the presumption that state courts are fully capable of adju-

dicating state law questions of preclusion that require interpretation of federal law. *See Browning*, 743 F.2d 1069.

■ Equitable grounds are far reaching and weigh heavily against the banks. Even if the buyers' claims did "relate to" the General Homes bankruptcy, interests of comity and efficiency abound. The buyers allege only state law causes of action against the banks and the other defendants. Without the ghost of the General Homes bankruptcy, this action could only be brought in state court. There are no federal causes of action generally, nor are there bankruptcy claims specifically. Federal courts are hesitant to absorb the state courts' jurisdiction, especially when the claims are at best tangential to the bankruptcy. *See In re Jasperson*, 116 B.R. 740 (Bankr.S.D.Cal.1990); *In the Matter of Micro Mart, Inc.*, 72 B.R. 63 (Bankr.N.D.Ga. 1987); *In re Newman*, 61 B.R. 27 (Bankr. D.N.M.1986). This hesitancy grows ever stronger as the memory of the bankruptcy proceeding fades.

Defendants in state court actions must rationally examine the proper avenues for their defense. Removal is not automatic. State court defendants cannot clog the federal docket, interrupt state court proceedings, delay state court trial settings, and inflate the costs to the plaintiffs without a *need* to remove their case. If the bankruptcy proceeding is active, the debtor defendants will receive an automatic stay. Non-debtor defendants may remove only if their claims relate to the bankruptcy. Claims generated after the bankruptcy plan has been confirmed will almost never have a conceivable effect on the bankruptcy estate. These cases must remain in state court, and the defendants must plead the appropriate defense—discharge, res judicata, collateral estoppel, or whatever—in state court. While scores of cases may touch bankruptcy proceedings, past or present, few are removable.

9. *Conclusion.*

The buyers are essentially seeking to relitigate an issue by bringing it in a different forum. The state court will decide whether this case is barred. This court simply does not have jurisdiction over a case that is only tangentially related to a historical bankruptcy proceeding. The banks have failed to show that the buyers' state court action arises under or is related to the General Homes bankruptcy. Because this court lacks jurisdiction, the motion to remand will be granted.