In re EMERALD ACQUISITION CORPORATION, Debtor.

ARTRA GROUP, INCORPORATED, Plaintiff,

v.

SALOMON BROTHERS HOLDING COMPANY, INC., Salomon Brothers, Inc., D.P. Kelly & Associates, L.P., Donald P. Kelly, Charles K. Bobrinskoy, James L. Massey, William Rifkind, and Michael J. Zimmerman, Defendants.

Bankruptcy No. 93 B 17632.
Adv. No. 93 A 01617.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 15, 1994.

Alan Kolod of Moses & Singer, New York City, for plaintiff.

Thomas B. Walper of Munger, Tolles & Olson, Los Angeles, CA, and Phillip S. Beck of Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, for defendants.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

The matter before the court is the Motion of Artra Group, Inc. ("Artra") to Abstain and Remand its First Amended Complaint ("Complaint") to the Illinois State Court in DuPage County. The above named Defendants contest this motion, asserting that Artra's Complaint is properly before the court. For the reasons stated below, the court remands Counts I through IV of Artra's Complaint to the State Court and retains jurisdiction over Counts V and VI.

## BACKGROUND

When considering a motion to remand, a bankruptcy court assumes that the facts alleged in the movant's complaint are true. Upon finding that it has jurisdiction to hear the claims, a court considers whether it would be appropriate to abstain. To understand the issues under consideration, a reci-

tation of the facts, as they appear in Artra's Complaint, would be helpful:

Emerald Acquisition Corp. ("Emerald") was formed in March, 1989 for the purpose of acquiring Envirodyne Industries, Inc. ("Envirodyne"). Emerald's shareholders include Salomon Brothers Holding Company and Salomon Brothers, Inc. (hereinafter referred to collectively as "Salomon"), D.P. Kelly & Associates ("DPK"), and Artra. In its Complaint, Artra challenges the conduct of Salomon and DPK during the year preceding the formation of Emerald and their conduct after Emerald was formed. Prior to the formation of Emerald, Artra owned 4,860,000 shares of Envirodyne's common stock, representing approximately 26.8% of its outstanding common stock.

In early 1988, Artra expressed interest in either purchasing the remainder of Envirodyne's shares or in liquefying its interest in the company. However, its shares were subject to a voting trust controlled by Envirodyne's management. Hence, before proceeding with any transaction, Artra had to obtain the approval of Envirodyne's management. Therefore, Artra's management approached Envirodyne to discuss various transactions that would enable Artra to maximize the value of its Envirodyne stock.

Subsequently, Salomon agreed to advise and represent Artra in its attempt to acquire Envirodyne or to facilitate the disposition of its Envirodyne stock. Artra also retained Salomon to render a fairness opinion regarding the consideration that Artra might be offered for its Envirodyne stock. In late 1988, Salomon dissuaded Artra from attempting to acquire Envirodyne.

Concurrently, Salomon entered into discussions with DPK in contemplation of a possible purchase of Envirodyne. DPK declined to participate in such a transaction because a hostile takeover was not feasible on account of Artra's substantial minority interest. Apparently, Salomon did not notify Artra of its discussions with DPK. In January, 1989, Artra met with Donald P. Kelly ("Kelly," a principal of DPK), to discuss matters not related to Envirodyne. However, during the

course of the meeting, Kelly expressed an interest in acquiring Envirodyne.

Artra immediately notified Salomon of Kelly's interest in purchasing Envirodyne. At this juncture, Salomon notified Artra of its earlier discussions with Kelly relating to DPK's potential purchase of Envirodyne. The following week, Salomon proposed a transaction in which an entity controlled by Salomon and managed by Kelly would purchase all of Envirodyne's stock. Artra would be a minority shareholder in the acquisition entity.

During the next three months, Salomon, DPK, and Envirodyne discussed the proposed transaction ("LBO Transaction"). While receiving daily updates from Salomon recapitulating these discussions, Artra continued to explore alternative vehicles for disposing its stock. Subsequently, Salomon and DPK induced Artra to participate in the LBO Transaction as opposed to liquidating its investment in Envirodyne in any other manner.

Emerald was formed to effectuate the LBO Transaction. Salomon and Envirodyne determined that Envirodyne's common stock was worth $40.00 per share at the time of the LBO Transaction. Pursuant to an agreement of merger dated March 19, 1989 between Emerald, Emerald Sub One, Inc. ("Emerald Sub"), a wholly owned subsidiary of Emerald, and Envirodyne, Emerald Sub commenced a tender offer for the outstanding shares of Envirodyne's common stock. Following the expiration of the tender offer, Emerald Sub purchased the tendered shares.

Simultaneous with the purchase of the tendered shares, Artra sold 1,875,000 of its Envirodyne shares to Emerald for $75 million in cash. Emerald then purchased Artra's remaining Envirodyne shares for $20.9 million of subordinated debt and 27.5% of Emerald common stock. Salomon controlled Emerald as it owned 68.875% of Emerald's stock while DPK owned the remaining 3.625%. Emerald then transferred all of Artra's holdings in Envirodyne to Emerald Sub. On May 1, 1989, Emerald Sub was merged into Envirodyne with Envirodyne being the surviving entity.

The gravamen of Counts I–IV relate to the discussions and negotiations which culminated in the LBO Transaction described above. Count I alleges a breach of duty of care by Salomon, Count II alleges a breach of the fiduciary duty of loyalty by Salomon, Counts III and IV allege, respectively, that Kelly, Charles K. Bobrinskoy ("Bobrinskoy"), James L. Massey ("Massey"), William Rifkind ("Rifkind"), and Michael J. Zimmerman ("Zimmerman") ("Director Defendants")[1] made fraudulent representations and violated The Illinois Consumer Fraud and Deceptive Practice Act, 815 ILCS § 505/2 (1993) (formerly *Ill.Rev.Stat.*, ch. 121½ para. 262.).

Following the LBO Transaction, Emerald's sole asset was the common stock of Envirodyne. In early 1992, Envirodyne suffered a liquidity crisis that caused it to default on its public debt, and ultimately caused Envirodyne's Chapter 11 proceeding.[2] On August 4, 1993, Artra obtained a judgment against Emerald in the amount of $38.9 million, representing principal and accrued but unpaid interest on the debentures issued by Emerald to Artra in connection with the LBO Transaction. On August 19, 1993, Emerald filed its petition for relief under Chapter 11 of the Bankruptcy Code.

Count V of Artra's Complaint alleges that the Director Defendants breached their fiduciary duty of loyalty to Emerald and Emer-

---

1. Each of the Director Defendants was on the Board of Directors of both Emerald and Envirodyne throughout the period of alleged wrongdoing. In addition, Kelly was a principal of DPK, Bobrinskoy was an officer at Salomon, and Massey, Rifkind, and Zimmerman were managing directors of Salomon.

2. On January 6, 1993, certain noteholders of Envirodyne filed an involuntary petition in this court against Envirodyne under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

The next day, Envirodyne's subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and Envirodyne consented to the entry of an order of relief in the involuntary case.

On December 17, 1993, after a lengthy confirmation hearing, the Debtor's First Amended Joint Plan of Reorganization as Twice Modified ("Plan") was confirmed by the court. *See, In re Envirodyne Indus.*, 93 B 319, Order No. 164, 1993 WL 566566.

ald's creditors by causing Envirodyne to file its petition for bankruptcy and for failing to adequately represent Emerald and its creditors in the Envirodyne proceedings. Specifically, Artra alleges that the Director Defendants: caused a plan of reorganization to be proposed which resulted in Emerald not receiving a distribution; caused Envirodyne to be undervalued by supporting a defectively and incompetently prepared valuation of Envirodyne; supported a Plan that released Salomon and DPK from liability relating to the LBO Transaction; and opposed efforts by Artra to lift the automatic stay (11 U.S.C. § 362) imposed in Emerald's Chapter 11 case and thereby prevented Artra from obtaining value for its Envirodyne common stock.

Finally, Count VI alleges that Salomon, DPK, and the Director Defendants tortiously interfered with Emerald's ability to satisfy. its debt to Artra. Artra filed its first complaint on November 4, 1993 in the Circuit Court of the Eighteenth Judicial Circuit, Du-Page County, Illinois. On November 22, 1993, Artra filed its first amended complaint. On December 1, 1993, Salomon, DPK, and the Director Defendants (collectively referred to hereinafter as "Defendants"), pursuant to 28 U.S.C. §§ 1441(b) and 1452(a), caused Artra's Complaint to be removed to this court.

Artra now requests that the court remand its Complaint back to the state court. It contends that the court, as a bankruptcy court, lacks jurisdiction to hear its claims as they are state law in character. In other words, its claims did not arise in, arise under, or relate to a bankruptcy proceeding. In the alternative, Artra requests that the court abstain from hearing its claims, as they are first and foremost state law claims that should be litigated in state court.

The Defendants maintain that Counts V and VI of Artra's Complaint arise in and relate to the Emerald and Envirodyne bankruptcy cases. In addition, since Counts I

through IV are so intertwined with the Envirodyne confirmation proceeding[3], the court has core jurisdiction to determine these claims. Alternatively, the court should exercise its supplemental jurisdiction to resolve all six counts of Artra's Complaint. Accordingly, the Defendants assert that it would be inappropriate for the court to either remand this proceeding or abstain from hearing it.

The court, after considering the memoranda and affidavits submitted by the parties and after considering the oral arguments of the parties, sets forth the reasons for its decision.

## DISCUSSION

### I. Remand

#### A. Improper Removal

The paramount issue the court must resolve is whether it has jurisdiction to hear Artra's complaint. Under 28 U.S.C. § 1452(a), a claim or cause of action may be removed to a district court only if such district court has jurisdiction of such claim or cause of action pursuant to 28 U.S.C. § 1334. 28 U.S.C. § 1334(b) provides, in relevant part, that a district court shall have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

28 U.S.C. § 157(a) allows a district court to refer any or all proceedings arising under title 11, or arising in a case under title 11 or related to a case under title 11 to a bankruptcy court. Bankruptcy courts may "hear and determine all cases under title 11, and all core proceedings arising under title 11 or arising in a case under title 11" 28 U.S.C. § 157(b)(1). According to the Seventh Circuit,

[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its

---

**3.** During the Envirodyne confirmation hearing, the court heard extensive testimony relating to the LBO Transaction. The court made comprehensive Findings of Fact and Conclusions of Law relating to certain aspects of the LBO Transaction. *See, In re Envirodyne Indus., Inc.,* 1993 WL 566565 (Bankr.N.D.Ill.1993) (Findings of Fact

and Conclusions of Law); *In re Envirodyne Indus., Inc.,* 1993 WL 566566 (Bankr.N.D.Ill.1993) (Memorandum Opinion). Hereinafter, the findings of fact and conclusions of law, the memorandum opinion, and the hearings which gave rise to the confirmation order shall be referred to as the *"Envirodyne"* case or proceeding.

nature, could arise only in the context of a bankruptcy case.

*Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990), *cert. den.,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1989) (citations omitted). A proceeding "arises under" title 11 if a party is claiming a right or remedy created by one of the specific sections of title 11. *In re Haws,* 158 B.R. 965, 969 (Bankr.S.D.Tex. 1993), *citing, In re GWF Inv., Ltd.,* 85 B.R. 771, 775 (Bankr.S.D.Ohio 1988). A proceeding "arises in" a title 11 case if it relates to those administrative matters that arise only in bankruptcy cases. *Haws,* 158 B.R. at 969, *citing, Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987). Examples include matters regarding allowance and disallowance of claims, discharges, confirmation of plans and orders to obtain credit. *Haws,* 158 B.R. at 969, *citing,* 1 King, *Collier on Bankruptcy,* ¶ 3.01 at 3–32, 3–33 (15th ed. 1993).

■ In addition to core proceedings, bankruptcy courts may hear noncore proceedings that are related to a case under title 11. 28 U.S.C. § 157(c)(1). However, such courts cannot determine a "related to" proceeding unless all parties consent. 28 U.S.C. § 157(c)(2). Without consent, a bankruptcy court may hear the related proceedings and propose findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1). However, these findings are subject to de novo review by a district court. *Id.* A proceeding "relates to" the bankruptcy if it affects the amount of property available for distribution or the allocation of property among creditors. *Pettibone Corp. v. Easley,* 935 F.2d 120, 123 (7th Cir.1991); *In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987).

■ In *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990), the court contrasted "related to" and "core" proceedings:

> If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Id.* (emphasis in original), *citing, Wood,* 825 F.2d at 97. Proceedings classified as "related to" usually involve causes of action owned by the debtor that become property of the estate under 11 U.S.C. § 541 and suits between third parties which in one way or another affect the administration of the title 11 case. 1 King, *Collier on Bankruptcy,* ¶ 3.01 at 3–29.

■ If a matter does not properly rest with a court, the court to which such claim or cause of action is removed may remand such claim. *In re Exchange Parts of America, Inc.,* 138 B.R. 585, 586 (Bankr.W.D.Ark. 1992). Section 157(c)(1) is to be construed narrowly, not only out of respect to Article III courts, but also to preserve the jurisdiction of state courts over questions of state law involving persons not a party to the bankruptcy. *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 749 (7th Cir. 1989). Although, technically, the claim does not need to be against the debtor or property of the estate, the removal must be supported by an articulation of a plausible way the claim can have an impact on the estate, not just the debtor. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984). Neither common issues, related parties, parallel claims, nor bankruptcy law make a case related to a bankruptcy for the purposes of removal jurisdiction. *Pacor,* 743 F.2d at 994. Therefore, remand may be the proper course where the resolution of the claim will have no bearing on the property of the debtor's estate.

### 1. Counts I through IV—LBO Transaction Claims.

These counts relate to the LBO Transaction and the formation of Emerald. Artra contends that this court does not have jurisdiction to hear these counts since they do not raise issues of federal law or relate to the administration of Emerald's estate. In response, the Defendants argue that, despite the state law nature of the claims, removal was proper since the issues raised by Artra were litigated in the *Envirodyne* reorganization proceedings. The Defendants maintain that granting Artra the relief sought would prevent the court's order of confirmation

from being effectuated. Therefore, Artra's claims fall within the core jurisdiction of the court, despite their state law flavor. In addition, the Defendants assert that, applying the principles of either collateral estoppel or res judicata, Artra is bound by certain findings of fact and conclusions of law in the *Envirodyne* proceeding that resolve these claims. Alternatively, they argue that since Counts V and VI are core in nature, the court may exercise its supplemental jurisdiction to hear the LBO Transaction Claims.[4]

### a. *Core Jurisdiction*

 The Defendant's reasoning that these claims "arose in" a bankruptcy proceeding is closely aligned to its argument that both collateral estoppel and res judicata preclude further litigation of the LBO Transaction Claims. Both arguments lack merit.

 The Defendants' contention that Artra is bound by the *Envirodyne* proceeding derives from a case in which the Supreme Court stated that "where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example, in bankruptcy ..., legal proceedings may terminate preexisting rights [of nonparties] if the scheme is otherwise consistent with due process." *Martin v. Wilks*, 490 U.S. 755, 762 n. 2, 109 S.Ct. 2180, 2184 n. 2, 104 L.Ed.2d 835 (1989); *Griffin v. Burns*, 570 F.2d 1065, 1071–2 n. 7 (1st Cir.1978). Although this so called "bankruptcy exception" may be implemented to bind nonparties to a bankruptcy order, it is rarely employed.

The only case cited by the parties applying this exception is *Crop–Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 437 (7th Cir.1989). In *Crop–Maker*, a creditor of the debtor failed to file its claim after being served with notice of the district court judge's order requiring all creditors to intervene by a specified date. Instead, the creditor filed its action after the underlying bankruptcy proceeding was dismissed. As intervention in the prior case was mandatory, the district court held that the creditor was bound by the dismissal of the prior action and granted the defendant's summary judgment order on the grounds of res judicata.

Artra's LBO Transaction Claims do not attack the conduct of the Defendants in the *Envirodyne* proceeding. Further, Artra was neither a creditor nor a shareholder of Envirodyne. Although Artra was expressly invited to participate in the *Envirodyne* confirmation hearing, the court made it abundantly clear that Artra was not required to participate in such hearings. Therefore, unlike *Crop–Maker*, with respect to the LBO Transaction Claims, this is not a case where a party, aware of its rights, has chosen to take its chances in another forum. Accordingly, the bankruptcy exception described in *Martin* does not bind Artra to the *Envirodyne* proceedings.

 The court, however, does retain original core jurisdiction to effectuate its orders. *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45, 46–49 (7th Cir.1976), *cert. den.*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977); *Williams v. Stefan (In re L & S Indus. Inc.)*, 122 B.R. 987, 992 (Bankr.N.D.Ill.1991), *aff'd*, 133 B.R. 119 (N.D.Ill.1991), *aff'd*, 989 F.2d 929 (7th Cir.1993). As a result, applying either collateral estoppel or res judicata, certain persons or parties may be estopped from litigating an issue in state court if that issue was litigated in a bankruptcy court.

 However, both doctrines require that a person or entity must have been a party or in privity with a party to the previous action or proceeding to be bound by a bankruptcy court's order, unless required by a court to appear.[5] *Martin v. Wilks*, 490

---

4. *See, infra* discussion in Part I, § C.

5. To apply res judicata, the Defendants must establish that: 1) there was a previous, final judgement on the merits; 2) involving the same causes of action; and 3) between the same parties or their privies. *L & S Indus.*, 122 B.R. at 992.

 To apply collateral estoppel, the Defendants must establish that: 1) the issue sought to be precluded must be the same as that involved in the prior action; 2) the issue must have been actually litigated; 3) the determination of the issue must have been essential to the final judgement; and 4) the party against whom estoppel is asserted must have been fully represented in the prior action. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987).

U.S. at 763, 109 S.Ct. at 2185 ("a party seeking a judgment binding on another cannot obligate that person to intervene, he must be joined"). Further, the Supreme Court stated:

> Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.

*Id.* at 765, 109 S.Ct. at 2186.

Neither *L & S Indus.* nor *Ennis* endorse the Defendants' attempt to bind an entity to a bankruptcy court order to which it was not a party or in privity with a party. In *L & S Indus.*, the bankruptcy court's order dismissing an adversary proceeding did not preclude the state court defendants from litigating its counterclaims against the plaintiff. Although the same plaintiff brought both the adversary proceeding and the state court action, privity did not exist between the defendant in the bankruptcy proceedings, the trustee of the debtor, and the defendant in the state court action, the directors, officers, and shareholders of the debtor. *L & S Indus.*, 122 B.R. at 997. Therefore, the counterclaims raised in the state court action were not affected by the dismissal of the bankruptcy court action.

In *Ennis*, the district court should have precluded a state court action where the plaintiff attempted to relitigate an issue in state court which it had lost in bankruptcy court. The plaintiff was a party to the bankruptcy and had the opportunity to fully litigate the issue in the bankruptcy proceeding. Therefore, all of the defendants, whether or not they were parties to the bankruptcy, were entitled to the benefits of collateral estoppel. *Ennis*, 542 F.2d at 49. Neither collateral estoppel nor res judicata was applied to the detriment of a person not involved as a party or in privity with a party to the prior action in either *L & S Indus.* or *Ennis.*

■ Artra was not a party or in privity with a party involved in the *Envirodyne* proceeding. Artra was not a creditor of Envirodyne nor is Artra pursuing an action against Envirodyne or its directors. Nevertheless, the Defendants seek to bind Artra to the *Envirodyne* proceeding because they had the opportunity to participate in the hearing. However, the Defendants fail to provide the court with precedent for binding a party in such circumstances. As both res judicata and collateral estoppel apply only to parties or those in privity with a party, neither doctrine is applicable in the instant case. To bind Artra to the *Envirodyne* proceedings does not comport with the court's notions of due process. *In re AM Int'l, Inc.*, 142 B.R. 252, 255 (Bankr.N.D.Ill.1992) (Only those non-parties with notice of the need to appear and assert their claims or lose them risk being bound by the bankruptcy proceeding), *citing, Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ Artra's LBO Transaction Claims do not give rise to core jurisdiction. As Salomon and its Directors correctly state, "it is the subject matter of the action—and not the identity of the parties to it—that determines whether a proceeding is core." [6] Both the breach of fiduciary duty claim and the fraudulent misrepresentation claim are noncore claims. *In re Delaware & Hudson Ry. Co.*, 122 B.R. 887, 894 (D.Del.1991) (breach of fiduciary duty claim initiated by former and present shareholders/directors of debtor's parent was a noncore proceeding as it existed prior to and independent of the filing of the bankruptcy petition); *Diamond Mortgage*, 913 F.2d at 1239 (Diamond and Obie's malpractice and breach of fiduciary duty suit is not a core proceeding).

Artra's LBO Transaction Claims relate to the Defendants' conduct at the time of the LBO Transaction. These claims did not "arise in" either the *Envirodyne* bankruptcy case or the *Emerald* bankruptcy case. The events that gave rise to these allegations arose long before Envirodyne filed its petition for bankruptcy and, for the most part, before Emerald existed. The LBO Transaction Claims do not concern administrative

---

6. Joint Memorandum of Points and Authorities of Salomon Defendants and Outside Directors in Support of Opposition to Artra Group Incorporated's Motion to Abstain and Remand at 8.

matters of the Emerald estate nor are they of the type that could only arise in a bankruptcy proceeding. As a result, Counts I through IV of Artra's Complaint are not "core" matters and this court may not make any final findings of fact or conclusions of law with respect to such claims.[7]

### b. *Noncore Jurisdiction*

Alternatively, at a minimum, the Defendants maintain that the court has "related to" or noncore jurisdiction. As any recovery that Artra may obtain must come out of the property of Emerald's estate, the Defendants reason that Artra's claims must be "related to" the Emerald proceeding. The Defendants' position derives from their belief that Artra's claims are derivative in nature, belonging to Emerald's estate and not to Artra. A claim is derivative if it is indistinguishable from that of any other shareholder. *See, Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1070, *aff'd*, 500 A.2d 1346 (1985). Although Counts V and VI may be derivative in nature, the same cannot be said for Counts I through IV.

The Defendants' conclusion demonstrates their misunderstanding of the LBO Transaction Claims. These claims are state law agency claims that arise from the formation, not the reorganization, of Emerald. While the Defendants may seek indemnification from Emerald for any amount awarded to Artra, any such indemnification claim does not provide this court with a sufficient basis to invoke its jurisdiction. *Da Silva v. American Sav.*, 145 B.R. 9, 12 (S.D.Tex.1992). Artra was the only shareholder of Emerald induced to participate in the LBO Transaction. The remaining shareholders, defendants DPK and Salomon, did not need to be induced to participate. Therefore, in asserting its LBO Transaction Claims, Artra is unlike any other Emerald shareholder. Artra seeks recovery individually against the Defendants in their capacity as agents for Artra, and not in their role as directors of Emerald or Envirodyne. Therefore, any recovery for such claims would not deprive Emerald's estate or its shareholders of any property.

In noncore matters, a bankruptcy court must decide whether to retain its jurisdiction over the action. *Delaware & Hudson*, 122 B.R. at 892. A court retains its jurisdiction when the resolution of the action could have a direct and substantial impact on the asset pool available for distribution to the estate. *Diamond Mortgage*, 913 F.2d at 1239 (citations omitted). But, where the state law claims at issue existed prior to and independent of the filing of the bankruptcy petition, a court may decline to hear the case. *Delaware & Hudson*, 122 B.R. at 895 (district court withdrew its reference where the trustee sought damages for declaration of unlawful dividends, waste, breach of fiduciary duty by former and present directors/shareholders of debtor's parent). An integral inquiry is whether the action could have been brought in state court whether or not the bankruptcy petition was filed. *Id.* at 892.

In *Diamond Mortgage*, the court retained its jurisdiction over state law claims that occurred prepetition. *Diamond Mortgage*, 913 F.2d at 1239. However, unlike *Diamond Mortgage*, the Chapter 11 debtor is not a party to the instant action. Therefore, there is no possibility that resolution of the LBO Transaction Claims will have a "direct and substantial impact on the asset pool available for distribution to the estates." *Id.* Artra's LBO Transaction Claims emanate from events that occurred outside the context of Emerald's Chapter 11 case, before the filing of either the Emerald or Envirodyne petitions. In addition, these actions could have been brought regardless of whether the Envirodyne or Emerald petitions were filed. Therefore, since the resolution of the LBO Transaction Claims will not in any way affect the Emerald estate, the claims do not "relate to" the Emerald bankruptcy proceedings. Accordingly, without exercising its supplemental jurisdiction powers, this court does not have jurisdiction to hear these claims.

---

**7.** The Defendants do not assert, nor could they, that Artra's claims "arose under" a case under title 11. Clearly, Artra is not asserting a right or remedy created by a specific section of the Bankruptcy Code.

### 2. *Count V and VI—Valuation Claims.*

■ Count V pertains to the Director Defendants' management of *Envirodyne* during the period prior to the filing of the bankruptcy petition and their conduct up to and including the confirmation hearings.[8] Artra is challenging the Director Defendants, in their position as Emerald Directors, for causing Envirodyne to file its bankruptcy petition and for failing to adequately represent them and the other Emerald shareholders in the *Envirodyne* bankruptcy proceeding. In Count VI, Artra alleges that the Director Defendants tortiously interfered with Emerald's ability to satisfy its state court judgment. Artra contends that, as with the LBO Transaction Claims, the Valuation Claims are state law claims that should be adjudicated in state court.

The Director Defendants' reply is that the Valuation Claims constitute an impermissible collateral attack on the Envirodyne confirmation process and the bankruptcy court in general. They allege that these claims "arose in" a title 11 case, giving rise to a core proceeding. The Valuation Claims relate to administrative matters that arise only in bankruptcy matters. *See,* 28 U.S.C. § 157(b)(2)(A). Further, they also constitute a "proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity security holder relationship." 28 U.S.C. § 157(b)(2)(O). Therefore, the court concurs with the Defendants that the Valuation Claims are core matters.

■ A matter falls under the "catch all" exception of 28 U.S.C. § 157(b)(2)(O) if the matter is not expressly listed in § 157 and is a matter that would have no existence outside of bankruptcy. *Barnett,* 909 F.2d at 981. In its Valuation Claims, Artra assails the valuation testimony accepted by the court in the *Envirodyne* proceeding and the role of the Director Defendants in propounding such testimony. The proper forum in which to object to the testimony was the bankruptcy court during the *Envirodyne* proceeding. Artra may not take advantage of its decision not to participate in the *Envirodyne* proceed-

ing by attacking the findings of this court in a separate state court proceeding. *In re Schepps Food Stores, Inc.,* 160 B.R. 792, 799 (Bankr.S.D.Tex.1993) (state court actions challenging the results of a confirmation hearing should be precluded from going forward as a matter of law) *Gonzales v. Parks,* 830 F.2d 1033, 1035 (9th Cir.1987) (The uniformity of federal bankruptcy law would be threatened by allowing parties to collaterally attack a bankruptcy petition in state court).

■ Artra insists that its state law action does not attack the Envirodyne Directors or the *Envirodyne* proceeding in any matter. However, its Complaint contains numerous allegations that suggest that the Director Defendants, as directors of both Emerald and Envirodyne, improperly influenced the *Envirodyne* proceedings. *See,* First Amended Complaint, ¶¶ 65–68, 70–72. A state court finding in favor of Artra on any of these counts would frustrate the ability of this court to effectuate its order in the *Envirodyne* proceeding. Accordingly, since bankruptcy courts have jurisdiction under §§ 157(b)(2)(A) and (O) to enforce the terms of a confirmed plan, the Valuation Claims are core proceedings. *See, L & S Indus.,* 122 B.R. at 992.

■ Artra also alleges that the Director Defendants violated their fiduciary duty by causing Emerald to file its bankruptcy petition where there was neither a prospect for reorganization, nor any intent to reorganize Emerald. The sole purpose of filing the petition, according to Artra, was to prevent Artra from collecting its state court judgment. *See,* First Amended Complaint, ¶ 71(d). Certainly, a bankruptcy court has core jurisdiction to determine whether a bankruptcy petition was filed in bad faith. *Gonzales,* 830 F.2d at 1035 (federal bankruptcy law provides an exclusive set of remedies for challenging the filing of a bankruptcy petition—state courts do not have jurisdiction to determine whether the filing of a bankruptcy petition was in good faith).

The Valuation Claims would not have existed without the filing of the *Envirodyne* bankruptcy. Therefore, these claims are dis-

---

8. *See, supra* note 3.

similar to *In re Baren,* 47 B.R. 39 (N.D.Ill. 1984) (numerous claims pending in the state court for years prior to the bankruptcy filing); and *In re Sokol,* 60 B.R. 294, 295 (Bankr.N.D.Ill.1986) (debtor alleged breach of contract and fraud in a wrongful termination action). Artra's allegations in its Valuation Claims are inextricably intertwined with the *Envirodyne* bankruptcy and therefore shall not be remanded to the state court.

### B. *Equitable Remand*

■ Section 1452(b) provides in relevant part that "the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Grounds for equitable remand include:

1. Judicial economy
2. Prejudice to the involuntarily removed party
3. *Forum non conveniens*
4. A determination that the state court is better able to respond to questions of state law
5. Comity
6. Expertise of the court in which the matter is pending.

*Brizzolara v. Fisher Pen Co.,* 158 B.R. 761, 771 (Bankr.N.D.Ill.1993).

■ Artra argues that each of these criteria is satisfied in this case. Therefore, the court should remand its Valuation Claims to the state court on equitable grounds. However, notwithstanding Artra's contentions to the contrary, grounds one and six strongly support this court retaining its jurisdiction to hear the Valuation Claims. This court, having conducted the *Envirodyne* proceedings, is familiar with the conduct of the parties and with the numerous other allegations presented in these claims. Although the breach of fiduciary duty claim in Count V and the tortious interference claim contained in Count VI are state law claims, the conduct giving rise to such claims is wrapped so tightly around the *Envirodyne* proceeding that it would not interfere with the principles of comity for this court to decide these counts. In addition, the standards for establishing breach of fiduciary duty and tortious interference are well established in Illinois. *L & S Indus,* 122 B.R. at 997; *McMullin v. Harrole,* 1992 WL 184283, *4, 1992 U.S. Dist. LEXIS 11409, *12 (N.D.Ill.1992). Therefore, the court would not be interfering with a significant interest of state law by retaining this case.

Finally, Artra has not established how it would be prejudiced by this court hearing the Valuation Claims nor have they stated how *forum non conveniens* applies. Unlike the cases on which Artra relies, *In re Mill–Craft Bldg. Systems, Inc.,* 57 B.R. 531, 534 (E.D.Wis.1986), and *Baren,* 47 B.R. 39, this case has not been languishing in the state court for years nor is it a matter that could have been brought without the filing of a bankruptcy petition. Accordingly, the equities favor this court retaining its jurisdiction to hear Counts V and VI.

### C. *Supplemental Jurisdiction*

■ Having determined that the Valuation Claims are core matters, the court must now return to the issue of whether it should exercise its supplemental jurisdiction to hear the LBO Transaction Claims. Supplemental jurisdiction, as defined in 28 U.S.C. § 1367, provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Whether a bankruptcy court has the power to exercise its supplemental jurisdiction is uncertain. *Compare, Wieboldt Stores, Inc. v. Schottenstein,* 111 B.R. 162, 166 (N.D.Ill.1990) (allowing bankruptcy courts to exercise ancillary jurisdiction)[9] and *In re Fisher,* 151 B.R. 895, 899

---

9. Although *Wieboldt Stores* was decided prior to the enactment of 28 U.S.C. § 1367, ancillary jurisdiction is subsumed by the term "supple-

(Bankr.N.D.Ill.1993) (bankruptcy courts are not permitted to exercise supplemental jurisdiction). This court will not enter the fray as the minimum requirements for supplemental jurisdiction are not satisfied in the instant case.

To utilize supplemental jurisdiction, there must be a "common nucleus of operative fact" that the parties "ordinarily would be expected to resolve the matter in one judicial setting." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The facts that Artra must establish to recover on its LBO Transaction Claims are separate and distinct from those necessary to recover on its Valuation Claims. Even if the Defendants were liable for the LBO Transaction Claims, they may escape liability for the Valuation Claims. The two sets of claims involve different time periods, different events, and different facts. While all six counts relate to Artra's attempt to recover its investment in the LBO Transaction, Counts I through IV do not arise out of the common nucleus of operative fact as Counts V and VI. Therefore, the court denies the Defendants' request to exercise supplemental jurisdiction to hear the LBO Transaction Claims.

## II. *Abstention*

### A. *Mandatory Abstention*

Artra asserts that this court must abstain from hearing the claims which it finds it has jurisdiction to hear. Pursuant to 28 U.S.C. § 1334(c)(2), this court shall abstain from hearing the Valuation Claims if Artra can establish that each of the following:

1) it filed a timely motion;

2) the proceeding is based on solely state law issues;

3) the proceeding is "related to" a title 11 case but is not a core proceeding;

4) the proceeding could not have commenced in the United States courts except for § 1334;

5) an action was commenced in state court; and

6) the state action may be "timely adjudicated" in a forum of appropriate jurisdiction.

*In re Georgou*, 157 B.R. 847, 850 (N.D.Ill. 1993); *Brizzolara*, 158 B.R. at 771. As the Valuation Claims are core matters, mandatory abstention is not appropriate in this case.

### B. *Permissive Abstention*

Alternatively, Artra requests that this court abstain for equitable reasons under 28 U.S.C. § 1334(c)(1), which provides in relevant part:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1); *Matter of Chicago, Milwaukee, St. Paul, & Pac. R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993) (listing factors to be considered in determining whether permissive abstention is proper). Where most of the criteria for mandatory abstention are met, a bankruptcy court should carefully consider whether it would be appropriate to abstain under 28 U.S.C. § 1334(c)(1). *In re Rusty Jones, Inc.*, 124 B.R. 774, 780 (Bankr. N.D.Ill.1991).

In the instant case, most of the criteria for mandatory abstention have been satisfied. However, the most important factor, the noncore proceeding requirement, is not satisfied. Courts are not to abstain from hearing a core proceeding except in the most extraordinary circumstances. *Id.* at 780–81. Abstention is a narrow exception to the exercise of federal jurisdiction and a reorganization court should not abstain from interpreting its own confirmation order absent extraordinary circumstances. *Chicago, Milwaukee, St. Paul, & Pac. R. Co.*, 6 F.3d at 1194.

The Valuation Claims do not raise any unsettled or complex issues of state law for this court to interpret. *In re Ascher*, 128 B.R. 639, 647 (Bankr.N.D.Ill.1991). These claims present straightforward breach of fi-

mental jurisdiction." *Winstead v. J.C. Penny Co.,* *Inc.,* 933 F.2d 576, 589 (7th Cir.1991).

duciary duty and tortious interference actions, raised in the context of a bankruptcy proceeding. Artra has not demonstrated any particular reason why it would not be proper for this court to conduct hearings with respect to these counts. Accordingly, Artra's contention that this court should refrain from hearing the Valuation Claims is rejected.

## CONCLUSION

For the reasons stated herein, the court remands Counts I through IV of Artra's First Amended Complaint to the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois. The remaining Counts shall remain in this court and be set for trial. Artra's Motion to Abstain is denied.